PER CURIAM.
 

 11 The state has charged defendant with a violation of La.R.S. 14:98, operating a vehicle while intoxicated, fourth offense, on the basis of three prior guilty pleas to driving under the influence conducted in a single proceeding on August 10, 2004, in Tennessee. Defendant moved to quash the bill of information on grounds that the available contemporaneous records of the pleas,
 
 ie.,
 
 the transcript of the guilty plea colloquy conducted by the trial judge with defendant, revealed that the trial court had failed to advise him of his privilege against self-incrimination, and that the pleas were therefore invalid for enhancement purposes. After conducting a hearing on the motion on December 4, 2008, the trial court denied the motion to quash on grounds that, considering the totality of the circumstances, defendant had been “afforded all of the constitutional protections and safeguards that [are] required certainly under the laws of the State of Tennessee, but more importantly under the laws of the State of Louisiana.” Defendant
 
 *476
 
 sought review and the court of appeal reversed on the basis that the state had failed to make an “independent, |2affirmative showing to support the proposition that the trial court informed the defendant of his right against self-incrimination.”
 
 State v. Balsano,
 
 09-0005 (La. App. 5th Cir.2/27/09).
 

 The court of appeal specifically rejected the state’s attempt to import into the guilty plea colloquy the advice with respect to the privilege against self-incrimination he had received nearly a year earlier when he signed a form waiving his right to a preliminary hearing.
 
 Balsano,
 
 09-0005 at 3 (“This form advised the defendant of his right against self-incrimination during the course of the preliminary hearing, not during sentencing or any other judicial proceeding.”). We need not reach that question because we find that the Fifth Circuit panel erred in reversing the trial court’s judgment and granting the defendant’s motion to quash the indictment solely on the basis of the perceived defect in the plea colloquy relating to defendant’s Fifth Amendment privilege. While the available contemporaneous record of the guilty plea shows that defendant did not receive advice with respect to his privilege against self-incrimination, the record also reveals that he otherwise entered knowing and voluntary guilty pleas that would likely withstand scrutiny on collateral attack in their home state. Under these circumstances, enforcing Louisiana’s rules for taking guilty pleas against these out-of-state convictions would neither advance the policies underlying the requirements for a knowing and voluntary guilty plea in this state nor promote the fundamental fairness that this Court’s jurisprudence regarding collateral attacks on guilty pleas used to enhance a defendant’s sentence has sought to protect.
 

 According to the transcript of the plea colloquy on August 10, 2004, the trial judge in the Criminal Court of Tennessee at Memphis reviewed the charges to Iswhich defendant was entering pleas of guilty, the factual bases for the pleas, and the sentences negotiated with the state as part of a plea bargain. Thereafter, the court conducted the following exchange with defendant:
 

 Q. You understand you don’t have to plead guilty?
 

 A. Yes, sir.
 

 Q. All right. [Defense counsel] presented you with two documents for you to sign, one a petition for waiver of trial by jury. That’s this document. It explains your rights, right to a jury trial, l'ight to confront witnesses, right to bring in witnesses to testify for you, right to testify yourself, tell your side of it.
 

 If you were convicted by a jury, the Court would fix your punishment and you could appeal it. If you didn’t have a lawyer, the Court would appoint a lawyer for you. All of the rights I have explained are in that document.
 

 And he presented you with a notice of enhanced punishment, which puts you on notice that if you pick up another DUI, they may treat it as a second or third, I don’t know, but the punishment will be greater on a second. You have to serve at least 45 days in jail. And on the third, a minimum of 120 days in jail and the appropriate fines. Do you understand that.
 

 A. Yes, sir.
 

 Q. Knowing all that, you still want to plead guilty?
 

 A. Yes, sir.
 

 Q. Are you satisfied with [defense counsel’s] representation?
 

 
 *477
 
 A. Yes, sir .... [but] if I had gone to trial, what would the maximum punishment have been?
 

 Q. Well, didn’t he go over that with you and explain it to you? I told you in this document that you signed, notice of enhanced punishment, it points out that the punishment for a DUI first offense is from $350 to $1500 in fines and 48 hours. Second offense up to 11 months and ... 45 days in jail, $600 to $3500 in fines. Your third offense would be $1100 to $10,000 in fines and a minimum of 120 days in jail.
 

 A. I understand now.... That’s all.
 

 Q. All right. Are you sure you understand everything?
 

 14A. Yes, sir.
 

 Q. All right. I’ll accept Mr. Balsano’s pleas.
 

 When the state requested a transcript of this guilty plea colloquy, it also asked Tennessee officials for a
 
 Boykin
 
 or waiver of rights form or court minutes reflecting the waiver of defendant’s rights. The Tennessee officials supplied the transcript of the plea colloquy and the waiver of a preliminary hearing executed by the defendant but did not provide either the guilty plea form to which the colloquy referred or the contemporaneous minutes of the plea. Thus, as the Fifth Circuit panel emphasized in its decision, the available contemporaneous records from Tennessee failed to establish that defendant received advice with respect to his privilege against selfin-crimination at trial, advice required not only by Louisiana but also by Tennessee law.
 
 [1]
 

 Only four months after this Court adopted its three-right rule following the decision in
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)(waiver of the right to trial encompasses waiver of the privilege against self-incrimination, the right to trial by jury, and the right to confront one’s accusers), see
 
 State ex rel. Jackson v. Henderson,
 
 260 La. 90, 255 So.2d 85 (1971), we acknowledged that the rule reflected a minority view, that a majority of state decisions required “only that the trial judge canvass the matter with the defendant to verify that the plea is freely and understandingly made,” and that the rule was not constitutionally required.
 
 State ex rel. LeBlanc v. Henderson,
 
 261 La. 5315, 259 So.2d 557, 563 (1972). We thus observed that “ ‘[t]he new element added in
 
 Boykin
 
 was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.’ ”
 
 LeBlanc,
 
 259 So.2d at 560 (quoting
 
 Brady v. United States,
 
 397 U.S. 742, 747, n. 4, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970)). Nevertheless, while recognizing that in the majority of state jurisdictions “the failure to articulate all three rights (jury trial, confrontation, and self-incrimination privilege) does not invalidate the conviction,”
 
 LeBlanc,
 
 259 So.2d at 563, the Court resolved to apply the three-right rule adopted in
 
 Jackson
 
 as an interim measure until “the state and federal jurisprudence solidifies.”
 
 Id.,
 
 259 So.2d at 563. However, because
 
 Jackson’s
 
 rule was not constitutionally required, this Court made it prospective only from the date of
 
 Jackson’s
 
 finality, December 8, 1971. On collateral attack of those Louisiana guilty pleas entered before December 8, 1971, the Court resolved in
 
 LeBlanc
 
 to
 
 *478
 
 apply constitutional standards for determining the validity of the plea according to whether “the defendant made a voluntary and intelligent choice among available courses of action.”
 
 LeBlanc,
 
 259 So.2d at 564.
 
 [2]
 
 On that basis, the Court found that the guilty plea entered by the defendant in 1970, as | ¿reconstructed at the evidentiary hearing conducted in post-conviction proceedings, appeared voluntary although he had apparently received only advice with respect to his right to a trial by jury.
 
 LeBlanc,
 
 259 So.2d 565 (Barham, J., dissenting) (“The trial judge does not pretend that he explained that a guilty plea was self-incriminating, and that a guilty plea foreclosed the possibility of confrontation of accusers and witnesses.”).
 

 Over the course of the following 40 years,
 
 Jackson’s
 
 interim rule became a major facet of this Court’s jurisprudence and is now a part of statutory law. La. C.Cr.P. art. 556.1. However, instead of solidifying, the jurisprudence fractured along fault lines giving rise to what has been described as a “stuttering approach to the application of federal constitutional law to state court proceedings in Louisiana,”
 
 State v. Lewis,
 
 367 So.2d 1155, 1159 (La.1979), in an area of law “confused almost beyond understanding.”
 
 State v. Nelson,
 
 379 So.2d 1072, 1075 (La.1980)(Dennis, J., concurring). Thus, in the compass of those 40 years, a relatively obscure rule adopted by this Court for cases in which the defendant sought post-conviction relief from remote guilty pleas (of more than six years), and which required him to show more than violation of
 
 Jackson’s
 
 three-right rule,
 
 see State v. Cusher,
 
 400 So.2d 601, 602 (La.1981)(“If the pleas are set aside and a new trial required, it is probable that the state’s case, no matter how strong six years ago, would be impossible of proof.... Because of the length of time between the pleas and the habeas corpus application, the state is entitled to prove that the pleas by defendant were intelligently and voluntarily made, the fundamental
 
 Boykin
 
 requirement.”) (citations omitted), which the Court then applied in the context of habitual offender proceedings under La.R.S. 15:529.1,
 
 7State v. Johnson,
 
 404 So.2d 239, 247 (La.1981), applications later described by the Court as “an aberration,”
 
 State v. Shelton,
 
 621 So.2d 769, 774, n. 11 (La.1993), has now become the rule for collateral attacks in post-conviction proceedings for
 
 all
 
 final guilty pleas no matter when they occur.
 
 State v. Harris,
 
 97-1352, pp. 1-2 (La.10/31/97), 702 So.2d 678, 679 (a district court’s failure to abide by
 
 Jackson’s
 
 three-right rule “does not alone dis
 
 *479
 
 charge the inmate’s burden in post-conviction proceedings of showing, as a basis for vacating that conviction, a constitutional defect in his guilty plea.”) (citations omitted). With respect to the issue in the present case, advice regarding the Fifth Amendment privilege against compelled self-incrimination has been deemed essential to a valid guilty plea in Louisiana,
 
 State v. Age,
 
 417 So.2d 1183, 1189 (La.1982)(on reh’g);
 
 State v. Robicheaux,
 
 412 So.2d 1313, 1317 (La.1982), except when it is not.
 
 State v. Bosworth,
 
 415 So.2d 912, 924 (La.1982)(on reh’g)(trial court’s failure to mention that defendant was waiving his privilege against self-incrimination did not invalidate the plea colloquy when defendant, a practicing attorney, had actual knowledge of his privilege against self-incrimination);
 
 State v. Bowick,
 
 403 So.2d 673, 675 (La.1981
 
 )(Boykin
 
 “was not designed ... to serve as a technical trap for conscientious trial judges who conduct a thorough inquiry into the validity of the plea, as did the trial judge in this case.... The trial court’s failure to advise defendant expressly that his privilege against self incrimination applied to the trial as well as to the plea (a rather obvious matter of which defendant was possibly aware as a result of his trial counsel’s advice) was not fatal to his plea.”)(footnote omitted).
 

 | Jiowever, this Court has consistently allowed defendants to attack collaterally the validity of guilty pleas used to enhance their sentences, whether in habitual offender proceedings under La.R.S. 15:529.1,
 
 Shelton,
 
 621 So.2d at 774-80, or in habitual offender D.W.I. prosecutions.
 
 State v. Carlos,
 
 98-1366 (La.7/7/99), 738 So.2d 556. These challenges are not true collateral attacks in the sense that they seek to vacate the prior conviction and sentences but are in the nature of “a defense in a proceeding designed to enhance ... sentence.”
 
 Lewis,
 
 367 So.2d at 1160. At least initially, this case thus implicates this Court’s decision in
 
 Carlos,
 
 which established a three-step analysis for determining the validity of prior DWI guilty pleas for use in enhanced DWI proceedings. Adopting the Court’s prior opinion in
 
 Shelton,
 
 and acknowledging the presumption of regularity that attaches to prior final convictions,
 
 Parke v. Raley,
 
 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992),
 
 Carlos
 
 placed on the state the initial burden of proving the existence of the prior guilty pleas and that defendant was represented by counsel when the pleas were taken.
 
 Carlos,
 
 98-1366, p. 6, 738 So.2d at 559. If the state meets this initial burden, “the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.”
 
 Id.,
 
 98-1366 at 6-7, 738 So.2d at 559. If the defendant makes the required showing, the burden reverts to the state to produce a “perfect”
 
 Boykin
 
 transcript,
 
 i.e.,
 
 one “‘which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in
 
 Boy-kin.’” Carlos,
 
 98-1366 at 7, n. 4, 738 So.2d at 559 (quoting
 
 Shelton,
 
 621 So.2d at 775, n. 12.). Anything less than a perfect transcript, “such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant’s
 
 Boykin
 
 rights were prejudiced.”
 
 Id.,
 
 98-1366 at 7, 738 So.2d at 559. | sAlthough
 
 Carlos
 
 did not further define what prejudice to a defendant’s
 
 Boykin
 
 rights entailed, this Court made clear in
 
 Shelton
 
 what this third stage requires,
 
 ie.,
 
 a showing “that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three
 
 Boykin
 
 rights.”
 
 Shelton,
 
 621 So.2d at 780.
 
 Carlos
 
 spoke more broadly about prejudice to
 
 Boykin
 
 rights because prior DWI convictions used to enhance sentence in many cases, if not most, are misdemean-
 
 *480
 
 or offenses as to which the defendant does not have the right to a jury trial, shrinking
 
 Jackson’s
 
 three-right rule to two rights.
 
 State v. Jones,
 
 404 So.2d 1192 (La.1981).
 

 In the present case, the first two stages of
 
 Carlos
 
 coalesced. The transcript of the guilty plea colloquy conducted on August 10, 2004, satisfied both the state’s burden of establishing the fact of the prior convictions and defendant’s representation by counsel, and the defendant’s burden of then showing an apparent infringement of his rights,
 
 ie.,
 
 the failure of the trial court to advise him of his privilege against compelled self-incrimination at trial. Because the state did not, or could not, supplement this “imperfect” transcript with waiver forms or minutes from Tennessee which might have made up the difference,
 
 Carlos
 
 apparently dictated the decision of the Fifth Circuit panel in overruling the trial court and quashing the bill of information charging defendant with fourth offense DWI.
 

 However,
 
 Carlos,
 
 and its progenitor
 
 Shelton,
 
 addressed prior Louisiana guilty pleas taken after December 7, 1971. Enforcement of
 
 Jackson’s
 
 three-right rule in that context was therefore related to the policies underlying the rule of facilitating the taking of voluntary guilty pleas in Louisiana and of providing an adequate record for review, thereby forestalling the need for later evidentiary proceedings and eliminating post-plea attacks.
 
 Bowick,
 
 403 So.2d at 675. [ inHowever, the present case involves guilty pleas taken in another state as to which enforcement of
 
 Jackson’s
 
 three-right rule serves none of those purposes.
 

 This case therefore also implicates the Court’s decision in
 
 State v. Holden,
 
 375 So.2d 1372 (La.1979), which involved a defendant’s collateral attack on a 1972 federal conviction by way of a guilty plea then used to enhance his sentence under La. R.S. 15:529.1 following his conviction of a subsequent crime.
 
 Holden
 
 sought to reconcile the Court’s prior decision in
 
 Lewis
 
 with the Supreme Court’s then recent opinion in
 
 United States v. Timmreck,
 
 441 U.S. 780, 783, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). In
 
 Lewis,
 
 the Court had held that prior guilty pleas used to enhance sentence under La.R.S. 15:529.1 were subject to collateral attack according to
 
 Jackson’s
 
 three-right rule, although the guilty plea at issue in
 
 Lewis
 
 had been taken in Louisiana in 1970 and thus appeared governed by the exception to
 
 Jackson’s
 
 three-right rule carved out by
 
 Le-Blanc
 
 for Louisiana pleas taken before December 8, 1971.
 
 Lewis
 
 conceded as much but observed that
 
 LeBlanc
 
 created its exception in a case on true collateral attack,
 
 i.e.,
 
 in post-conviction proceedings aimed at setting aside the conviction and sentence. The Court declined in
 
 Lewis
 
 to extend the
 
 LeBlanc
 
 exception to cases “in which the collateral effect of a plea of guilty is the issue,”
 
 ie.,
 
 to cases in which the prior conviction is used to enhance sentence in habitual offender proceedings.
 
 Lewis,
 
 367 So.2d at 1160.
 
 Lewis
 
 held that the failure of the trial court to advise the defendant in his 1970 plea that he was waiving his right of confrontation rendered the plea invalid for habitual sentencing purposes. The decision thereby sanctioned a result that a defendant who could not set aside his guilty plea as invalid could nevertheless escape the consequences of it for subsequent sentencing enhancement on the basis of the
 
 Jackson
 
 rule not in effect at the time the plea was entered.
 

 | nFour months later, the Supreme Court ruled that the validity of a federal guilty plea may not be collaterally attacked in habeas proceedings under 28 U.S.C. § 2255 on the basis of violations of Fed. R.Crim.P. Rule 11 which are “neither con
 
 *481
 
 stitutional nor jurisdictional.”
 
 Timmreek,
 
 441 U.S. at 783, 99 S.Ct. 2087. The error in
 
 Timmreek
 
 did not involve advice with respect to trial rights waived by a guilty plea but failure to advise defendant of a mandatory minimum parole term as required under the extant, 1975 version of Fed.R.Crim.P. 11.
 

 In
 
 Holden,
 
 a majority of the Court read
 
 Timmreek
 
 to mean that “[wjhile waiver of the Boykin-listed constitutional rights arguably presents a more fundamental deficiency
 
 ... at the least
 
 ... in a collateral attack upon a federal guilty plea in an enhanced-punishment proceeding, the burden is upon the accused to show that plea was taken without a waiver of the
 
 Boykin-listed
 
 rights.”
 
 Holden,
 
 875 So.2d at 1374 (emphasis added). However, the Court took from
 
 Timmreek
 
 the broader rule that “federal constitutional law does not require us, on collateral attack, to consider a plea as unknowingly made simply because the record does not affirmatively show waiver of Boykin-listed rights.”
 
 Holden,
 
 375 So.2d at 1374. To that extent, we overruled
 
 Lewis
 
 (while maintaining
 
 Lewis
 
 for Louisiana state court guilty pleas taken after December 8, 1971 as a matter of this state’s policy) and held that “upon collateral attack the accused has the affirmative burden of showing that he was in fact not advised, either by the court or through his counsel, of the particular consequences of his plea that were not touched upon in an otherwise sufficient colloquy.”
 
 Holden,
 
 375 So.2d at 1374.
 
 Holden
 
 thus obliterated the distinction drawn in
 
 Lewis
 
 between collateral attacks on prior pleas in post-conviction proceedings as opposed to collateral attacks mounted in habitual offender proceedings.
 
 Holden
 
 also equalized non-Louisiana guilty pleas 112and Louisiana guilty pleas taken before December 8,1971 when they are used to enhance a defendant’s sentence upon conviction of a subsequent crime. For the latter, and thus for the former, the standard has been not the three-right rule of
 
 Jackson
 
 but the constitutional rule of voluntariness applied in
 
 LeBlane
 
 and in the majority of state jurisdictions at that time,
 
 i.e.,
 
 “the proper standard for determining the validity of a guilty plea is whether it represents a voluntary and intelligent choice among alternative courses of action.”
 
 LeBlanc,
 
 259 So.2d at 563 (citing
 
 North Carolina v. Alford,
 
 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)).
 

 However, in later decisions, this Court treated
 
 Holden
 
 as merely a burden-shifting case which placed the burden on the defendant to prove on the basis of contemporaneous records that he did not receive his
 
 Jackson
 
 three-right advice and thereby relieved the state of an initial burden of proving that he did receive his three
 
 Jackson
 
 rights.
 
 State v. Bolton,
 
 379 So.2d 722, 723 (La.1979)(as to non-Louisiana and federal pleas the defendant “has the burden of proving that the plea was involuntary or that (if taken subsequent to Boykin) he did not waive
 
 Boykin
 
 rights”). Thus, in
 
 State v. McGinnis,
 
 413 So.2d 1307, 1311 (La.1981)(on reh’g), this Court invalidated guilty pleas in the state of Washington to grand larceny because neither the plea colloquy nor the waiver form referred to the defendant’s privilege against self-incrimination. Similarly, in
 
 State v. Cressy,
 
 440 So.2d 141, 143-44 (La.1983), the Court invalidated a federal guilty plea to distribution of heroin in 1972 because the district judge failed to inform defendant of his | lsprivilege against self-incrimination, although he did so in a jurisdiction that did not require the advice under Fed. R.Crim.P. 11 as it read in 1972.
 
 [3]
 

 
 *482
 
 In the present case, we now return
 
 Holden
 
 to its original substantive aspect: that for guilty pleas entered in Louisiana before December 8, 1971, and for all non-Louisiana guilty pleas, used to enhance sentence following a subsequent conviction, a defendant does not satisfy his burden of proof on collateral attack merely by presenting contemporaneous records revealing a violation of
 
 Jackson’s
 
 three-right rule. He must show, as he must now show under
 
 Harris
 
 in a collateral 114attack mounted in post-conviction proceedings initiated to set aside the prior conviction and sentence, that his guilty plea was not voluntary as a constitutional matter,
 
 ie.,
 
 that it did not represent a knowing and voluntary choice among available alternatives.
 
 [4]
 
 Thus, in a particular case, all three
 
 *483
 
 of the
 
 Carlos
 
 steps may coalesce when the prior guilty pleas are from another state. An “imperfect”
 
 Boykin
 
 transcript,
 
 i.e.,
 
 one revealing a violation of
 
 Jackson’s
 
 three-right rule, may satisfy the state’s initial burden of proving the fact of the conviction and defendant’s representation by counsel at the plea taking, the defendant’s burden of then proving an apparent defect in the plea colloquy, and the state’s ultimate burden of proving, for the non-Louisiana conviction, that the plea was nevertheless voluntary as a constitutional matter and therefore valid for purposes of enhancing the defendant’s sentence.
 

 In the present case, we think it clear that the extensive colloquy conducted by the Tennessee judge on August 10, 2004, fully discharged the state’s ultimate burden in the present case despite the court’s failure to advise defendant specifically that he was waiving his privilege against compulsory self-incrimination at trial. The trial court confirmed on the record the details of his plea bargain with the state regarding sentence, delved into the factual bases of the pleas, spoke with the defendant extensively regarding his understanding of the sentencing consequences carried by the charged crimes, impressed upon him that his guilty pleas would resolve all matters with the state except for sentencing, and 11smformed him that if he persisted in pleading guilty, he would not be coming back to court for a trial in which he could select a jury, challenge the state’s witnesses by confronting them before the fact finder, and present his defense by calling in his own witnesses and taking the stand to testify in his own right. The trial court thus advised defendant that his guilty plea waived four specific and essential constitutional trial rights, not only the right to a jury trial and to confront his accusers, but also his right to compulsory process,
 
 Washington v. Texas,
 
 388 U.S. 14, 18, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967)(“The right of an accused to have compulsory process for obtaining witnesses in his favor stands on no lesser footing than the other Sixth Amendment rights that we have previously held applicable to the States.”), and his right to take the stand to testify in his own defense.
 
 Rock v. Arkansas,
 
 483 U.S. 44, 51, 107 S.Ct. 2704, 2708-09, 97 L.Ed.2d 37 (1987)(“The right to testify on one’s own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that are essential to due process of law in a fair adversary process.”)(internal quotation marks and citation omitted).
 

 In the context of all of the advice given, the trial court’s failure to mention specifically a fifth constitutional right, the privilege protecting a defendant from compelled self-incrimination at trial, cannot support a finding that defendant entered each of his guilty pleas without “a full understanding of what the plea connotes and of its consequences.”
 
 Boykin,
 
 395 U.S. at 244, 89 S.Ct. at 1712. We note in this regard that unlike Louisiana and federal statutory law,
 
 see
 
 La.C.Cr.P. art. 556.1(E) and Fed.R.Crim.P. 11(h), Tenn. R.Crim.P. Rule 11 does not contain a harmless-error provision. However, Tennessee courts apply harmless-error analysis to Rule 11 errors, specifically with regard to the failure to advise 11fidefendant of his privilege against compulsory self-incrimination.
 
 Blankenship v. State,
 
 858 S.W.2d 897, 903-05 (Tenn.1993);
 
 Clark v. State,
 
 800 S.W.2d 500, 503-04 (Tenn.Cr.App.1990).
 
 [5]
 
 Thus, we would be particular
 
 *484
 
 ly reluctant to endorse the Fifth Circuit panel decision in the present case to invalidate a conviction that would likely survive collateral attack in the jurisdiction in which it occurred.
 

 Accordingly, the decision of the Fifth Circuit is reversed, the trial court’s denial of defendant’s motion to quash is reinstated, and this case is remanded to the district court for further proceedings consistent with the views expressed herein.
 

 DECISION OF THE FIFTH CIRCUIT REVERSED; DENIAL OF MOTION TO QUASH REINSTATED; CASE REMANDED.
 

 KIMBALL, C.J., would deny the writ.
 

 [1]
 

 .
 
 See
 
 Tenn.R.Crim.P. 1 l(b)(l)(the court shall personally inform defendant in open court of his: (D) right to plead not guilty or, having already so pleaded, to persist in that plea; (E) right to a jury trial; (F) right to confront and cross-examine adverse witnesses; (G) right to be protected from compelled self-incrimination; and (H) that if he pleads guilty or nolo contendere, "there will not be a further trial of any kind except as to sentence.”)
 

 [2]
 

 . This aspect of
 
 LeBlanc
 
 left the dissenters, Dixon, Barham, and Summers, JJ., completely nonplussed.
 
 LeBlanc
 
 addressed two issues. First, whether, in the absence of a verbatim transcript of the plea colloquy, a trial court faced with a defendant's collateral attack on his final conviction had the authority to conduct evidentiary proceedings in an attempt to reconstruct the plea. This Court answered that question in the affirmative.
 
 LeBlanc,
 
 259 So.2d at 260 (''[W]hen a complete, verbatim transcript of the plea proceeding is unavailable, competent testimony may be used to reconstruct the crucial procedure.”). The Court then addressed the standard by which the determination of the plea's voluntariness would then be addressed and decided, in effect, that it would not hold trial judges accountable for complying with the rule adopted in
 
 Jackson
 
 in taking pleas before
 
 Jackson
 
 was decided. The dissenters viewed that decision as an outright rejection of
 
 Boy-kin,
 
 decided in June 1969, and warned trial courts in this state of the dire consequences that might follow from this Court's apparent defiance of the Supremacy Clause.
 
 LeBlanc,
 
 259 So.2d at 566 (Barham, J., dissenting). However, for the majority of the Court, because
 
 Boykin
 
 did not announce a three-right constitutional rule of practice applicable to the states, the decision to make
 
 Jackson’s
 
 three-right rule prospective only as a matter of policy in this state posed no problems under the Supremacy Clause.
 

 [3]
 

 . The 1966 version of Fed.R.Crim.P. 11 in effect at the time the Supreme Court decided
 
 Boykin,
 
 and at the time of the federal guilty plea at issue in
 
 Cressy,
 
 was far simpler than
 
 *482
 
 the extant version of the rule today. The 1966 Rule 11 was only four sentences long and made no mention of any specific constitutional right waived by a guilty plea, as it required only that the district court judge address the defendant personally and determine "that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.”
 
 See McCarthy v. United States,
 
 394 U.S. 459, 462, n. 4, 89 S.Ct. 1166, 1169, 22 L.Ed.2d 418 (1969). Thus, in
 
 Holden,
 
 which also involved a 1972 federal guilty plea, the colloquy reflected "only that the trial judge ascertained from the defendant’s attorney that he was satisfied that the defendant fully understood the (unspecified) consequences and that the trial judge accepted the attorney's assurance that he had discussed the consequences at great length with the defendant and that he understood them.”
 
 Holden,
 
 375 So.2d at 1375, n. 3. However, because the state had not submitted the transcript at trial, and it was therefore not a formal part of the record on appeal, this Court pretermitted the question of whether the colloquy "amounts only to a formal defect in the proceedings which cannot form the basis of a collateral attack under
 
 Timmreck." Id.
 
 By pretermitting the question,
 
 Holden
 
 thereby indicated that such a determination would necessarily take place outside the compass of
 
 Jackson's
 
 three-right rule.
 

 Rule 11 did not begin to elaborate on the advice federal district courts must give a defendant with respect to the rights waived by entering a guilty plea until the comprehensive revision of the Federal Rules of Criminal Procedure by Congress in 1975. The amended Rule 11 adopted by Congress went far beyond the Supreme Court's own proposed revision of Rule 11, part of a package of proposed revisions of the rules sent by the Court to Congress in 1974. The Court's own Rule 11 would have required the district court to determine only whether the defendant understood the nature of the charge to which he was pleading, the penalties which the offense carried, "that he has the right to plead not guilty,” and "that if he pleads guilty there will be no further trial."
 
 See
 
 H.R.Rep. No. 94-247, 94th Cong., 1st Sess. 21-22, 1975 U.S.Code Cong. & Admin. News 674;
 
 see also United States v. Henry,
 
 713 F.Supp. 1182, 1187-90 (N.D.Ill.1989) (describing the Supreme Court's proposed rule, Congress's amendment of the rule, and observing that the Advisory Committee Notes to the Supreme Court's version indicated that the Court "takes the position that the defendant's right not to incriminate himself is best explained in terms of his right to plead not guilty and to persist in that plea...."). By specifying that there would be no future trial of any kind, the Supreme Court sought in its proposed revision of Rule 11 to make "this fact clear to those defendants who, though knowing they have waived trial by jury, are under the mistaken impression that some kind of trial will follow."
 
 Henry,
 
 713 F.Supp. at 1187. Notably, the Supreme Court's proposed Rule 11 did not mention a single specific constitutional trial right waived by a guilty plea, although the same CourL had decided
 
 Boykin
 
 only four years earlier.
 

 [4]
 

 . However, the Court's subsequent decisions in
 
 Shelton
 
 and
 
 Carlos
 
 changed one aspect of
 
 Holden,
 
 which agreed with
 
 Lewis
 
 that collateral attack on a prior guilty plea used to enhance sentence was confined to the contemporaneous records of the guilty plea colloquy.
 
 Holden,
 
 375 So.2d at 1376;
 
 Lewis,
 
 367 So.2d at 1160. However, in
 
 Shelton,
 
 the Court overruled that aspect of
 
 Lewis
 
 (and that aspect of
 
 Holden
 
 by implication) and held that a defendant "can attempt to meet his burden of production with a transcript, with testimony regarding the taking of the plea, or with other affirmative evidence.”
 
 Shelton,
 
 621 So.2d at 779, n. 24.
 

 [5]
 

 . This Court has not yet resolved whether the harmless-error provision of La.C.Cr.P. art. 556.1(E) applies to violations of art. 556.1(A)(3), specifying the trial rights waived by a guilty plea that a trial court must explain to a defendant before it accepts the plea, and
 
 *484
 
 incorporating
 
 Jackson’s
 
 three-right rule.
 
 Cf. State v. Guzman,
 
 99-1753 (La.5/16/00), 769 So.2d 1158 (failure to advise defendant of sentencing range provided by the offense to which he plead guilty as required by art. 556.1(A)(1), and of enhanced penalties for subsequent offense as required by (then) art. 556.1(E) (rewritten to present form in 2001 La. Acts 243) harmless). However, as does Tennessee, federal courts subject errors with respect to so-called
 
 Boykin
 
 defects to harmless-error analysis as a matter of Fed. R.Crim.P. 11(h). See,
 
 e.g., United States v. Gomez-Cuevas,
 
 917 F.2d 1521, 1525-26 (10th Cir.1990)(failure to advise defendant of his right to confrontation and his privilege against self-incrimination harmless);
 
 United States v. Stead,
 
 746 F.2d 355, 356-57 (6th Cir.1984)(same);
 
 see also United States v. Johnson,
 
 1 F.3d 296, 301-02 (5th Cir.1993)(application of harmless-error test under Rule 11(h) does not distinguish between "core" and non-core violations of the rule).