KUHN, J.
| ^Defendant, Wendell Tyrone Smith, was charged by grand jury indictment with the second degree murder of Phillip Robinson, a violation of La. R.S. 14:30.1 (count I). He initially pled not guilty. Following jury selection and pursuant to a plea agreement, defendant withdrew his not guilty plea, and, after a Boykin[1] hearing, pled guilty to the responsive offense of manslaughter, a violation of La. R.S. 14:31, on count I. The State also amended the indictment to charge defendant with illegal use of a weapon by discharging a firearm while committing a crime of violence, a violation of La. R.S. 14:94(F) (count II). In accordance with the plea agreement, defendant also pled guilty to count II. On count I, defendant was sentenced to forty years at hard labor. On count II, he was sentenced to ten years at hard labor, without benefit of probation, parole, or suspension of sentence, to run consecutively with the sentence imposed on count I. A motion for appeal was not made by defendant’s counsel, but defendant successfully moved for posteonviction relief seeking an out-of-time appeal. Defendant now appeals, assigning error to his Boykin hearing. For the following reasons, we affirm the defendant’s convictions and sentences.

STATEMENT OF FACTS

Because defendant pled guilty, the facts of his offenses were not developed at trial. The following facts are taken from the Boykin hearing. On April 19, 2008, defendant went to an apartment located on Jade Avenue in Baton Rouge that was the home of Jasmin Ennis, the mother of defendant’s brother’s child. When defendant arrived, he began to “have words” with Jasmin and threatened to slap her. During the confrontation, defendant had a firearm in his pocket that he did not attempt to conceal. The victim, Phillip Robinson, and his friend, Quinton Johnson, were also present at the apartment. When Johnson noticed defendant approaching Rand that he was armed, Johnson motioned to the victim that they should leave the scene. As the victim walked away, defendant shot him in the back eleven times. It was undisputed that the victim was mortally wounded.
A review of the record reflects that after jury selection, a plea agreement was struck between defendant and the State, which included agreed-upon pleas and sentences. The minutes taken on the day of the Boykin examination reflect that the trial court informed and obtained a waiver of all three of defendant’s Boykin rights:
The accused was advised that the accused possessed certain constitutional rights that would be surrendered upon acceptance of a guilty plea, namely: the right to a trial by jury or by the Court, the right to confront and cross-examine the witnesses testifying on behalf of the State, the right to compulsory process, and the right against compulsory self-incrimination.
In response to examination by the Court, the accused indicated an understanding of these rights and waived said rights.
The transcript of the plea reflects the trial court failed to inform defendant of his right against compulsory self-incrimination and to obtain a valid waiver thereof.[2] On appeal, defendant does not allege any prejudice that resulted due to the trial court’s failure to inform him of this privilege and *738 he does not challenge the length of his sentences on appeal.

BOYKIN HEARING

In his sole assignment of error, defendant claims both of his convictions are constitutionally infirm because the trial court failed to advise him, or obtain a waiver, of his privilege against self-incrimination. As such, he asserts his convictions should be set aside.
|4In Boykin, the United States Supreme Court stated, “Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one’s accusers.” The Court went on to state, “We cannot presume a waiver of these three important federal rights from a silent record.” Boykin, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712 (internal citations omitted). The Louisiana Supreme Court has specifically held that on direct review of a conviction resulting from a guilty plea, an appellate court may not presume a valid waiver of rights from a silent record. See State v. Deville, 2004-1401 (La.7/2/04), 879 So.2d 689, 691 (per curiam).
As a general proposition, the validity of a guilty plea turns on whether the defendant was informed of three fundamental constitutional rights — his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers — and whether, having been informed of those rights, the defendant knowingly and voluntarily waived them. State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291, 334, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006). When a defendant is represented by counsel, the trial court accepting his guilty plea may presume that counsel has explained the nature of the charge in sufficient detail that the defendant has notice of what his plea asks him to admit. The ultimate inquiry under Boy-kin is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. State v. Jenkins, 2011-1436 (La.App. 1st Cir.3/23/12), 91 So.3d 1075, 1078, (citing Juniors, 915 So.2d at 334-35). “That [a defendant] would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and Irrational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant’s advantage.” North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).
Initially, we note the record in the instant case indicates that, even prior to the advice of any of his Boykin rights, defendant planned to waive his privilege against self-incrimination and testify. During the opening statement in the trial underway at the time that defendant pled guilty, defense counsel stated:
Ladies and gentlemen, you are going to hear from Wendell Smith. He wants to get on the witness stand under oath and tell you what happened. He wants to get on that witness stand and tell you what happened, and he wants to try to withstand the intense cross examination that a lawyer as competent as [the prosecution’s counsel] is going to give him. He understands [the prosecution’s counsel] can make him look bad just because of his expertise, but he is willing to take that chance because he wants you to see *739 his sincerity. He wants you to know what actually happened that day.
In State v. Balsano, 2009-0735 (La.6/19/09), 11 So.3d 475, 476-84 (per curiam), the defendant challenged the validity of an out-of-state plea used to enhance his driving-while-intoxicated conviction. Specifically, he contended thát the transcript of the guilty plea colloquy conducted by the trial judge revealed that the court failed to advise him of his privilege against compulsory self-incrimination. The Supreme Court tracked the extensive history following Boykin, and ultimately concluded that for guilty pleas entered in Louisiana before December 8, 1971, and for all non-Louisiana guilty pleas, a defendant on collateral attack must show more than a mere violation of the three-right rule adopted in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971); he must show that his guilty plea was not voluntary as a constitutional matter, i.e., that it did not represent a knowing and voluntary choice among available alternatives. Balsano, 11 So.3d at 482. The Supreme Court ruled that “the extensive colloquy conducted by the Tennessee judge ... fully discharged the [Sjtate’s ultimate burden | fiin the present case despite the court’s failure to advise defendant specifically that he was waiving his privilege against compulsory self-incrimination at trial.” Balsano, 11 So.3d at 483. Specifically, the Henderson court explained:
The trial court confirmed on the record the details of his plea bargain with the [Sjtate regarding sentence, delved into the factual bases of the pleas, spoke with the defendant extensively regarding his understanding of the sentencing consequences carried by the charged crimes, impressed upon him that his guilty pleas would resolve all matters with the [Sjtate except for sentencing, and informed him that if he persisted in pleading guilty, he would not be coming back to court for a trial in which he could, select a jury, challenge the [Sjtate’s witnesses by confronting them before the fact finder, and present his defense by calling his own witnesses and taking the stand to testify in his own right.
Balsano, 11 So.3d at 483.
Our Supreme Court concluded, “In the context of all of the advice given, the trial court’s failure to mention specifically a fifth constitutional right, the privilege protecting a defendant from compelled self-incrimination at trial, cannot support a finding that defendant entered each of his guilty pleas without ‘a full understanding of what the plea connotes and of its consequences.’ ” Balsano, 11 So.3d at 483 (citing Boykin, 395 U.S. at 244, 89 S.Ct. at 1712).
While Balsano addresses an out-of-state guilty plea, the principles espoused are applicable to the instant case. During the instant Boykin examination, the trial court confirmed that defendant consulted with his lawyer, and that he wished to give up his “rights to go forward with [a] trial,” he understood he did not have to give up these rights, and that he was not being forced to do so. In fact, the trial court specifically noted, “I believe you know what you’re doing, so you stop me if you don’t.” Defendant confirmed he graduated from high school, was not under the influence of medication, and that he could read and write the English language. The trial court informed and explained to defendant his right to confront his accusers, his right to testify on his behalf, and his right to call witnesses. ^Additionally, the trial court explained to defendant that by pleading guilty, there would not be a jury trial, and continually asked defendant during the colloquy if he was confused on any issue, whether he wished to maintain his guilty plea, and whether he was pleading voluntarily. Moreover, the trial court, like *740 the court in Balscmo, delved into the factual bases of the guilty pleas. Further, we note that during the actual voir dire of the jury during the trial in the defendant’s presence, the trial judge on numerous occasions explained to the jury the defendant’s constitutional rights against compulsory self-incrimination.
We find that in the context of all the advice given, the trial court’s failure to mention specifically the privilege protecting a defendant from compelled self-incrimination at trial cannot support a finding that defendant entered each of his guilty pleas without a full understanding of what the plea connotes and of its consequences. Although the transcript reveals the trial court’s failure to advise defendant specifically that he was waiving his privilege against compulsory self-incrimination, we think the extensive colloquy conducted by the trial court resulted in a knowing and voluntary plea by defendant. See Bal-sano, 11 So.3d at 483. This assignment of error is without merit.

DECREE

For these reasons, we affirm the convictions and sentences of defendant-appellant, Wendell Tyrone Smith.
CONVICTIONS AND SENTENCES AFFIRMED.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. When there is a discrepancy between the minutes and the transcript, the transcript prevails. See State v. Lynch, 441 So.2d 732, 734 (La.1983).