# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NO. 2024 KA 0080

# STATE OF LOUISIANA

# VERSUS

# MARCUS CLAYTON

Judgment Rendered: **JAN 1 5 2024**

* * * * *

On Appeal from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
Trial Court No. 21-01142

The Honorable Louise Hines, Judge Presiding

* * * * *

Hillar C. Moore, III
District Attorney
Dylan C. Alge
Assistant District Attorney
Baton Rouge, Louisiana

Attorneys for Appellee,
State of Louisiana


Jacob Longman
Kathryn Jakuback Burke
F. Richard Sprinkle
Baton Rouge, Louisiana

Attorneys for Defendant-Appellant,
Marcus Clayton

Harry Daniels, III
Prairieville, Louisiana

* * * * *

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

Miller J dissents w reasons

**WOLFE, J.**

The defendant, Marcus Clayton, was charged by bill of information with nineteen counts of possession with the intent to distribute a Schedule II controlled dangerous substance (oxycodone) (counts one through nineteen), in violation of La. R.S. 40:967(A) and 40:964(A)(1)(p); two counts of possession with the intent to distribute a Schedule III controlled dangerous substance (suboxone) (counts twenty and twenty-one), in violation of La. R.S. 40:968(A) and 40:964(D)(2)(a); five counts of possession with the intent to distribute a Schedule IV controlled dangerous substance (alprazolam) (counts twenty-two through twenty-six), in violation of La. R.S. 40:969(A) and 40:964(B)(2); and four counts of illegally carrying a firearm while in possession of a controlled dangerous substance (counts twenty-seven through thirty), in violation of La. R.S. 14:95(E).[1] Though initially pleading not guilty, the defendant later pled guilty to the amended charges of possession of oxycodone with an aggregate weight of two grams or more but less than twenty-eight grams (counts one and two), in violation of La. R.S. 40:967(C)(2). The State dismissed the remaining charges and, thereafter, the defendant was sentenced to consecutive terms of five years at hard labor on each count. The defendant filed a motion for reconsideration or modification of sentence and a motion to withdraw guilty plea and set aside sentence, both of which were denied. The defendant now appeals, designating two assignments of error. For the following reasons, we vacate and set aside the convictions and sentences and remand the matter for further proceedings consistent with this opinion.

---

[1] We note the bill of information contains several citation omissions and errors. For counts twenty and twenty-one, the defendant was erroneously charged with violating La. R.S. 40:964(D)(2)(1), and for counts twenty-two through twenty-six, the defendant was erroneously charged with violating La. R.S. 40:964(B)(1.5). It is well-settled the statute in effect at the time of the commission of the offense controls. See **State v. Sugasti**, 2001-3407 (La. 6/21/02), 820 So.2d 518, 520-21. At the time of the commission of the offenses - September 22, 2020 - the correct citations for the respective charges were La. R.S. 40:964(D)(2)(a) and 40:964(B)(2).

## FACTS

Because the defendant pled guilty, the facts were not developed at trial. However, during the defendant's plea colloquy, the State provided the following factual basis for the charges:

> Back in 2020, the Narcotics Division of the East Baton Rouge [Parish] Sheriff's Office was investigating the transfer and possession of oxycodone. They spoke with a confidential informant who stated she had gotten oxycodone from an individual named Marcus. She agreed to wear a hidden recording device. On that device, it showed an individual identified as Marcus Clayton possessing oxycodone. With those recordings, . . . the Narcotics Division . . . applied for multiple warrants both at addresses known to Marcus Clayton and a car shop that he had. They executed those warrants at those locations. They found more oxycodone.

## ASSIGNMENTS OF ERROR

In his first assignment of error, the defendant alleges he was denied effective assistance of counsel when his attorney, who was suspended from practicing law at the time of the plea, promised he would receive a probated sentence. In his second assignment of error, he argues the trial court erred in denying his motion to withdraw guilty plea, as his plea was based on counsel's promise of a probated sentence. As the issues are interrelated, we will address them together.

A guilty plea is a conviction and, therefore, should be afforded a great measure of finality. **State v. Emerson**, 2023-0120 (La. App. 1st Cir. 9/15/23), 375 So.3d 1027, 1029. As a general proposition, the validity of a guilty plea turns on whether the defendant was informed of three fundamental constitutional rights—his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers—and whether, having been informed of those rights, the defendant knowingly and voluntarily waived them. **State v. Smith**, 2014-0578 (La. App. 1st Cir. 11/7/14), 167 So.3d 736, 738, <u>writ denied</u>, 2014-

3

2566 (La. 10/2/15), 178 So.3d 987. Here, the defendant argues his pleas were not knowing or voluntary on account of counsel's ineffective assistance.[2]

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. Under the standard for ineffective assistance of counsel set forth in **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a conviction must be reversed if the defendant proves: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. See **State v. McGee**, 2018-1052 (La. 2/25/19), 264 So.3d 445, 446 (per curiam). For claims like the defendant's, that counsel's ineffective assistance rendered a guilty plea invalid, the **Strickland** analysis under the first deficiency prong remains unchanged. Whereas, under the second prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." **Hill v. Lockhart**, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

A valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. La. Code Crim. P. art. 556.1(B). Prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. La. Code Crim. P. art. 556.1(A)(1). When the record

---

[2] Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. **State v. Anderson**, 2023-0271 (La. App. 1st Cir. 11/3/23), 2023 WL 7270839, *4 (unpublished), writ denied, 2023-01591 (La. 5/21/24), 385 So.3d 241. But when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. **Id.** If the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim is relegated to post-conviction proceedings. **State v. Taylor**, 2004-346 (La. App. 5th Cir. 10/26/04), 887 So.2d 589, 595. Here, the record is sufficient to fully consider the defendant's claim that counsel's ineffective assistance rendered his guilty pleas unknowing and involuntary.

4

establishes an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. **State v. McGarr**, 52,641, 52,642 (La. App. 2d Cir. 4/10/19), 268 So.3d 1189, 1196.

When ruling on a motion to withdraw a guilty plea, the trial court should look beyond the colloquy concerning the waiver of rights and consider all relevant factors. See **State v. Green**, 468 So.2d 1344, 1346 (La. App. 1st Cir. 1985). A court, when called upon to ascertain an accused's state of mind, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. **State v. Galliano**, 396 So.2d 1288, 1290 (La. 1981). Reasons supporting withdrawal of the plea would ordinarily include factors bearing on whether the guilty plea was voluntarily and intelligently made, such as breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like. A mere change of heart or mind by the defendant as to whether he made a good bargain would not ordinarily support allowing the withdrawal of a bargained guilty plea. **McGarr**, 268 So.3d at 1197.

A trial court may permit a guilty plea to be withdrawn at any time prior to sentence. La. Code Crim. P. art. 559(A). However, a trial court retains authority to permit the withdrawal of a constitutionally infirm guilty plea even after a sentence has been imposed. See **State v. Thompson**, 2008-1099 (La. App. 1st Cir. 12/23/08), 2008 WL 6809587, *1 (unpublished); see also **State v. Allah**, 2017-0785 (La. 1/9/18), 232 So.3d 554 (per curiam). A guilty plea is constitutionally infirm when it is not intelligent and voluntary. **Boykin v. Alabama**, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). A defendant has no absolute right to withdraw a previously entered plea of guilty, and the trial court's decision

5

to permit withdrawal of a guilty plea is discretionary, subject to reversal only if that discretion is abused or arbitrarily exercised. See **State v. Rider**, 2023-0162 (La. App. 1st Cir. 11/9/23), 379 So.3d 40, 43, writ denied, 2023-01713 (La. 6/5/24), 385 So.3d 1154.

The record reveals the defendant was arrested on the instant charges in September 2020, and he retained Ronald Haley as his attorney in February 2021. During his representation of the defendant, on December 7, 2021, Mr. Haley was suspended from the practice of law for a year and a day, with all but six months of the suspension deferred. See **In re Haley**, 2021-01466 (La. 12/7/21), 328 So.3d 418 (per curiam). Mr. Haley's associate, Ryan Beaulieu, represented the defendant during his suspension, including at the **Boykin** hearing.

At the **Boykin** hearing on March 21, 2022, the State indicated a plea agreement had been reached, and the defendant would enter a guilty plea on counts one and two. Specifically, the State said:

> Mr. Clayton will be entering a change of plea [on] Counts 1 and 2, he'd plead responsively to Possession of Oxycodone. However, that would be two to twenty-eight. Those each carry, potentially, up to five years. There's a potential exposure of ten years. He's going to request a PSI. Do not object to any PSI, but the other counts will be dismissed in return for Mr. Clayton pleading responsively to Counts 1 and 2 to Possession of Oxycodone between two and twenty-eight grams.

When asked if his guilty pleas were a result of any force, intimidation, coercion, or promises, the defendant responded in the negative. The defendant also stated he discussed his case with his attorney and was satisfied with his representation. Thereafter, the trial court addressed the defendant in accordance with the mandates set forth in La. Code Crim. P. art. 556.1. The trial court specified the sentencing range for each charge was not less than one year nor more than five years, with or without hard labor, and a fine of not more than five thousand dollars. The trial court informed the defendant he was giving up the right to a trial by jury, the right to require the State to prove his guilt beyond a

6

reasonable doubt, the right to confront and cross-examine witnesses against him, the right to remain silent, the right to assistance of a lawyer, the right to present witnesses in his defense, and the right to appellate review of an adverse trial verdict. The defendant said he understood he was giving up those rights, and the trial court found the pleas were entered knowingly, intelligently, freely, and voluntarily. The trial court ordered a presentence investigation (PSI) and set the matter for sentencing on May 25, 2022.

On May 25, 2022, the defendant was represented by Mr. Beaulieu, who asked for a continuance to allow Mr. Haley to represent the defendant for sentencing. At a bench conference, Mr. Beaulieu said:

> Yes, I'm not going to say -- even if whatever mitigation he wants to provide, the judge considered or not, **just being that this matter was totally worked out prior to me**, I understand that when you step into the shoes in some cases, you become the lead guy. I've done that. I think this case, I came in at more than the tail end of it. So like I said, if Your Honor was leaning the opposite way of imprisonment, I would like that to, at least -- him to, at least, be standing next to Mr. Haley[.]

The trial court granted the continuance, and Mr. Haley represented the defendant at sentencing on June 16, 2022.

On August 31, 2022, the defendant moved to withdraw his guilty pleas through newly retained counsel. According to the defendant, his pleas were neither voluntary nor knowing as a result of ineffective assistance of counsel. The defendant alleged he learned of Mr. Haley's suspension from the practice of law sometime between December 9 and December 15, at which time the defendant requested a meeting. The defendant contended that during the meeting with Mr. Haley, Mr. Haley informed the defendant an attorney from his office, Mr. Beaulieu, would represent him until Mr. Haley was eligible to practice law again. However, Mr. Haley continued to provide updates on the case to the defendant via phone calls, in-person meetings, and text messages. In an attached affidavit, the defendant contended he would not have pled guilty to the charges had he not been

7

promised by Mr. Haley that he would receive a probated sentence. According to the defendant, Mr. Haley advised him "[three] years of probation was the agreement."

Also attached to the motion were screenshots of numerous text messages between the defendant and Mr. Haley. As early as September 2021, the defendant asked Mr. Haley about entering into a plea agreement in exchange for eighteen months of probation, to which Mr. Haley responded that he would call the prosecutor. In October 2021, the defendant messaged that he was "[c]hecking on the deal[,]" and Mr. Haley said he would have the deal finalized once he finished trial in another case. The text messages further confirm a meeting was scheduled between the defendant and Mr. Haley shortly after the supreme court suspended Mr. Haley, and Mr. Haley continued to message the defendant with case updates. A few days before the **Boykin** hearing, on March 18, 2022, Mr. Haley texted the defendant, "Hey my friend. Plea Monday to a psi. Judge will probate you at sentencing. Good news is [A]mber will take your bracelet off Monday." The defendant asked about the judge ordering a PSI to which Mr. Haley responded, "But he's gonna [sic] probate you." A few days after their exchange, the defendant asked Mr. Haley whether he should hire another attorney or wait until he was sentenced to probation.

At a hearing on the motion to withdraw guilty plea, Mr. Haley was questioned about the plea agreement:

Q. Okay. And then so you represent Mr. Clayton, and you said there was a resolution on the table, right?

A. Yes.

Q. And you communicate that resolution with Mr. Clayton?

A. Absolutely.

Q. And during your conversations with Mr. Clayton, you guys spoke via telephone sometimes?

8

A. Yes.

Q. You guys also spoke via text message?

A. Yes.

Q. And also sometimes in person?

A. Absolutely.

Q. Okay. So I want to take you to this resolution. Okay. What was your communication to Mr. Clayton about what this resolution was?

A. My communication to Mr. Clayton, and this was the first time I communicated that to him, was actually in this courtroom was that Mr. Clayton be allowed to plead guilty to two counts of possession, and the State was going to offer probation. To the best of my memory, that's what it was.

Mr. Haley testified he believed a contract existed with the State in which the defendant would receive probation but indicated the contract was verbal and had not been reduced to writing or put on the record.[3] Later, however, Mr. Haley said he told the defendant a probated sentence was not guaranteed. Mr. Haley agreed he was suspended from the practice of law from December 2021 to June 2022, during which time Mr. Beaulieu represented his clients, including the defendant. Mr. Beaulieu testified he enrolled in the defendant's case, and his understanding at the time of his enrollment was that an agreement had been reached with the State. The trial court denied the motion to withdraw guilty plea, finding the pleas were knowing, voluntary, and intentional.

On appeal, the defendant does not contest the sufficiency of the trial court's **Boykin** advisement or his waiver of those rights. Rather, he argues that he was induced to plead guilty based on Mr. Haley's ineffective assistance insomuch as he was promised he would receive a probated sentence in exchange for his guilty pleas in accordance with an agreement with the State. The defendant relies on **State v. Lewis**, 421 So.2d 224, 226 (La. 1982), as support for his argument the trial court erred in denying his motion to withdraw his pleas. In **Lewis**, the

---

[3] The defendant waived the attorney-client privilege prior to Mr. Haley's testimony.

defendant claimed his guilty plea was involuntary because he had been misled by his defense attorney as to the possibility of probation. Apparently, his defense attorney alleged that he had misunderstood the trial court and, in turn, "inadvertently misled" the defendant. **Id.**

While we acknowledge the State did not make any sentencing recommendations and the trial court advised the defendant of the sentencing range, it is apparent that Mr. Haley misled the defendant to believe an agreement had been reached with the State. Mr. Haley testified a verbal plea agreement had been reached with the State, though the agreement was not reduced to writing or put on the record. Despite failing to memorialize the verbal agreement, Mr. Haley repeatedly told the defendant, in writing, that a probated sentence would be imposed. There are numerous text messages from Mr. Haley wherein he not only advised the defendant probation would likely be ordered, but he promised the defendant he would receive probation. Based on that promise, the defendant misunderstood his plea agreement and justifiably thought he would receive probation.

A guilty plea is constitutionally infirm when it is not entered freely and voluntarily, if the **Boykin** colloquy was inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept. **State v. Young**, 2020-0049 (La. App. 1st Cir. 11/6/20), 315 So.3d 904, 907, <u>writ denied</u>, 2020-01402 (La. 2/9/21), 310 So.3d 177. The defendant has demonstrated Mr. Haley induced his misunderstanding and that Mr. Haley's representations rendered his guilty pleas involuntary and uninformed. The defendant has established that, but for Mr. Haley's errors, he would not have pled guilty and would have gone to trial. <u>See</u> **Lockhart**, 474 U.S. at 58-59. Based on the record before this court, we find the defendant's guilty pleas

were not constitutionally entered, and the trial court abused its discretion in denying the motion to withdraw guilty plea.

Accordingly, we vacate and set aside the defendant's convictions and sentences. The matter is remanded to the trial court to allow the defendant to withdraw his guilty pleas.

**CONVICTIONS AND SENTENCES VACATED; REMANDED TO ALLOW THE DEFENDANT THE OPPORTUNITY TO WITHDRAW GUILTY PLEAS.**

STATE OF LOUISIANA          STATE OF LOUISIANA

COURT OF APPEAL            VERSUS

FIRST CIRCUIT             MARCUS CLAYTON

DOCKET NUMBER             2024 KA 0080

**MILLER, J., dissenting.**

Upon consideration of the majority's opinion herein, I must respectfully dissent. The majority correctly explains the applicable rights and obligations at play in the <u>Boykin</u> process and notes that the defendant does not contend on appeal that the <u>Boykin</u> was defective. Instead, the defendant argues that he was justified in relying on the advice of an attorney who represented him at some point, but who was suspended from the practice of law for much of the time during which this matter was pending.

I do not believe that the defendant is justified in his expectation that he would be placed on probation based on a representation by a suspended attorney, when at the time his plea was entered in court, the State specifically requested a PSI and candidly informed him that his plea of guilty to counts one and two, possession of oxycodone, could potentially carry a sentence of up to five years each for a total exposure of ten years. The transcript further reveals that the trial court thoroughly examined the defendant to ensure that he understood that he may be sentenced to no more than five years on each count and a incur a fine of up to $5,000.00 on each count, to which the defendant responded affirmatively, "yes sir."

While the opinion makes clear that this attorney represented to the defendant that his acceptance of a plea agreement would result in a suspended sentence or probation and not jail time, the <u>Boykin</u> transcript does not remotely suggest or otherwise indicate that a suspended sentence was in the making. Neither the State nor the trial court insinuated or promised the defendant that he would receive a probated sentence, and the trial court's order for production of a PSI belied the

1

premise that a suspended sentence was impending. Further, the defendant appeared with a substitute counsel who never suggested that a sentence had been agreed upon. Finally, as the majority pointed out, the defendant "responded in the negative" when asked if his guilty plea was a result of any promises.

A trial court's decision to deny or grant a motion to withdraw a plea of guilty is subject to reversal only if the trial court's discretion is abused or arbitrarily exercised. State v. Rider, 2023-0162 (La. App. 1st Cir. 11/9/23), 379 So. 3d 40, 43. I believe that the trial court in the instant matter did not abuse its discretion. I do not believe that a defendant can ignore the trial court's express admonishments in favor of contrary representations made by an attorney who the defendant knew to be suspended from the practice of law at the time. To hold otherwise would allow any defendant with buyer's remorse to back out of a plea agreement based on a proper Boykinization by simply proving that a third party guaranteed a different sentence. This conclusion diminishes the value of the trial court's role in the process. The jurisprudence does not support such an exception.