CLARENCE E. McMANUS, Judge.
|2The State of Louisiana appeals from the trial court’s judgment granting defendant’s motion to quash. We reverse the decision of the trial court and remand this case for further proceedings.
On March 31, 2008, the Jefferson Parish District Attorney filed a bill of information, charging defendant, Andre Arlan Domino, Jr., with driving while intoxicated (DWI), third offense, in violation of LSA-R.S. 14:98(A)(D). The bill of information alleged that defendant had two prior convictions for DWI in violation of LSA-R.S. 14:98; the first on March 15, 2000, in case number S729608 in Second Parish Court, Division “B”; and, the second on February 18, 2004, in case number S892941 in Second Parish Court, Division “A.” Both prior convictions were obtained by guilty pleas.
The defendant filed a motion to quash the bill of information, alleging that the judge and the attorney failed to sign the waiver of rights form in his first predicate offense. Defendant then filed a supplemental motion in which he argued |3that a review of the transcript demonstrated his plea was not voluntarily or knowingly entered.
After a hearing was held, the trial court granted defendant’s motion to quash the first DWI predicate, finding that the State did not prove a valid waiver of Boykin rights. The State now appeals from the trial court’s ruling granting the motion to quash[1].
A presumption of regularity attaches to prior convictions in multiple offender DWI cases and the burden is on the defendant to show the prior guilty plea is constitutionally deficient. State v. Collins, 04-255, p. 5 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, 1153, writ denied, 04-2798 (La.3/11/05), 896 So.2d 62. Procedurally, in an alternative argument, the State contends that defendant is barred from a collateral attack on his prior plea, and that his predicate conviction is now final[2].
In State v. Balsano, 09-0735, p. 8 (La.6/19/09), 11 So.3d 475, 479 (per cu-riam), the Louisiana Supreme Court recognized that it has consistently allowed defendants to attack collaterally the validity of guilty pleas used to enhance their sentences, whether in habitual offender proceedings under LSA-R.S. 15:529.1, State v. Shelton, 621 So.2d 769 (La.1993) or in habitual offender D.W.I. prosecutions, State v. Carlos, 98-1366 (La.7/7/99), 738 So.2d 556. This line of jurisprudence appears to set forth the respective burdens of proof when a defendant challenges the use of a predicate conviction for enhancement under the ’ recidivist habitual offender and driving while intoxicated statutes. Furthermore, this Court 1¿recognizes a motion *663 to quash is the proper vehicle to challenge the constitutional validity of a prior DWI guilty plea. See State v. Lowry, 00-107 (La.App. 5 Cir. 6/27/00), 762 So.2d 1275, 1277.
The Louisiana Supreme Court’s decision in Carlos established a three-step analysis for determining the validity of prior DWI guilty pleas for use in enhanced DWI proceedings. Balsano, supra. Adopting the Court’s prior opinion in Shelton, and acknowledging the presumption of regularity that attaches to prior final convictions, Carlos placed on the State the initial burden of proving the existence of the prior guilty pleas and that the defendant was represented by counsel when the pleas were taken. Balsano, supra (citing Carlos, 98-1366 at 6, 738 So.2d at 559). If the State meets this initial burden, “the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.” Balsano, supra (quoting Carlos, 98-1366 at 6-7, 738 So.2d at 559). If the defendant makes the required showing, the burden reverts to the State to produce a “perfect” Boykin transcript, i.e., one “which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin.” Id. (quoting Carlos, 98-1366 at 7, 738 So.2d at 559 n. 4 and Shelton, 621 So.2d at 775 n. 12). Anything less than a perfect transcript, “such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant’s Boykin rights were prejudiced.” Balsano, supra (quoting Carlos, 98-1366 at 7, 738 So.2d at 559).
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court emphasized three federal constitutional rights that are waived by a guilty plea: the privilege against self-incrimination, the right to a trial by jury, and the right to confront accusers. State v. Davis, 03-488 (La.App. 5 Cir. 11/12/03), 861 So.2d 638, 642, unit denied, 03-3401 (La.4/2/04), 869 So.2d 5874. Because a plea of guilty waives these fundamental rights of an accused, due process requires that the plea be a voluntary and intelligent waiver of known rights in order to be valid. The record of the plea must show that the defendant was informed of these three basic rights and then knowingly and voluntarily waived them. State v. Galliano, 396 So.2d 1288, 1290 (La.1981). Under Boykin v. Alabama, the decision to plead guilty will not be considered voluntary unless, at the very least, the defendant has been advised of his privilege against self-incrimination, and his rights to a trial by jury and confrontation. State v. Payton, 04-1024, p. 4 (La.App. 5 Cir. 1/11/05), 894 So.2d 362, 365. The record must also show the defendant freely and voluntarily waived those rights. Id.
The Balsano court explained that Carlos spoke more broadly about prejudice to Boykin rights because prior DWI convictions used to enhance sentence in many cases, if not most, are misdemeanor offenses as to which the defendant does not have the right to a jury trial, shrinking the three-right rule to two rights. Balsano, 09-0735 at 9,11 So.3d at 479-80.
Whenever a misdemeanor guilty plea is ,to be used as a basis for actual imprisonment, enhancement of actual imprisonment or conversion of a subsequent misdemeanor into a felony, it is incumbent upon the trial judge to inform the defendant that by pleading guilty he waives these enumerated constitutional rights. State v. Vu, 02-1243 (La.App. 5 Cir. 4/8/03), 846 So.2d 67, 71. The trial judge must also ascertain that the accused understands what the plea connotes and its *664 consequences. “While it is preferable for the trial judge to conduct a colloquy to ascertain the validity of the plea, such a colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea.” Id.
In this case, at the hearing on the motion to quash, defendant challenged the first DWI predicate and argued that he was not represented by counsel at the time IfiOf the plea. He also argued that the plea was a “group plea” with four individuals pleading at one time. He contended that there was no articulated waiver of rights in the transcript. Defendant testified at the hearing that he had an 11th grade education and no GED or high school diploma. Defendant recalled being in Second Parish Court in March of 2000. He testified that the district attorney told him to sign the document and things could be resolved without him having to go to jail. He testified that he had no legal training and that when he agreed to plead his main concern was to avoid going to jail. Defendant testified that he had no legal counsel present. He also testified that there were three or four other defendants present that day and so he was not sure who the judge was talking to. The trial court found that according to the transcript, defendant never affirmatively said he understood the rights being waived, stating that “[a]t no time did the defense, as I read the transcripts, affirmatively said (sic) that they understood the rights that they were waiving.” As such, the court granted defendant’s motion to quash.
Defendant challenged the constitutionality of his predicate DWI guilty plea. The State had the initial burden of showing the existence of the guilty plea and that defendant was represented by counsel when the plea was entered. We find that the State met the first prong of its initial burden by providing proof of the existence of the 2000 predicate guilty plea.
However, defendant was not represented by counsel at the time he pled guilty to this offense, as the March 15, 2000 transcript reflects that defendant was in proper person. Defendant had a right to counsel at the time of his predicate plea. Regardless of whether imprisonment is actually imposed, Article I, Section 13 of the Louisiana Constitution guarantees a defendant the right to counsel in any case punishable by a term of imprisonment. State v. Wise, 04-1445, p. 3 (La.App. 5 Cir. 5/31/05), 905 So.2d 387, 390. A defendant has the right to counsel under the 17Sixth Amendment of the United States Constitution only where a sentence of imprisonment is imposed. Id. A sentence of imprisonment includes a suspended sentence in which the defendant is placed on probation. Id. In this case, defendant received a sentence for his first predicate plea that included imprisonment for six months, all of which was suspended except for two days to be served in jail or on Home Incarceration, whichever defendant was qualified for. He received one-year of active probation. Thus, we find that defendant was entitled to counsel.
The right to counsel is a fundamental right guaranteed by the state and federal constitutions. State v. Rodrigue, 01-377 (La.App. 5 Cir. 8/28/01), 795 So.2d 488, 493. Once informed of the right to counsel, however, an accused may intentionally waive the right. Id. Because the predicate plea was uncounseled, the State had the burden of proving a valid waiver of counsel. An uncounseled misdemeanor conviction, absent a valid waiver of counsel, may not serve as a predicate for enhancement of a subsequent DWI offense. State v. Bush, 03-1438 (La.App. 5 Cir. 4/27/04), 873 So.2d 795, 798. The State bears the burden of proving that an unrep *665 resented defendant knowingly and intelligently waived his right to counsel before pleading guilty to a predicate misdemean- or DWI that is used to enhance a subsequent DWI offense. Id. The determination of the validity of the accused’s waiver of counsel rests on the totality of the circumstances in each case. Id.
Before accepting a misdemean- or guilty plea, the trial judge should expressly advise the defendant of his right to counsel and to appointed counsel if he is indigent. State v. Rodrigue, 01-377 (La.App. 5 Cir. 8/28/01), 795 So.2d 488, 498. The trial judge should determine if the waiver is knowing and intelligent under the circumstances. Id. In determining the knowing and intelligent nature of the waiver of right to counsel, the trial judge should consider such factors as the age, 1 seducation, experience, background, competency and conduct of the accused as well as the gravity of the offense. Id. Whether an accused has made a knowing and intelligent waiver of his right to counsel is a question which depends upon the facts and circumstances of each case. Id. (citing State v. Strain, 585 So.2d 540, 542 (La.1991)). The critical issue on review of the waiver of rights is whether the defendant understood the waiver. State v. Nabak, 03-919 (La.App. 5 Cir. 12/30/03), 864 So.2d 758, 762.
In the present case, we find that the transcript of the March 15, 2000 predicate conviction reflects that defendant, who was unrepresented, knowingly and intelligently waived his right to counsel before pleading guilty to the predicate misdemeanor DWT that was used to enhance the subsequent DWI offense. According to the transcript, four defendants were present for the colloquy, with two of the defendants, including Domino, appearing in proper person. At the beginning of the proceeding, the trial judge confirmed defendant’s date of birth as May 16, 1971, and also confirmed his social security number and driver’s license number. The judge also confirmed that defendant had a twelfth grade education.[3] He explained that defendant was charged with driving while intoxicated on September 18, 1999, was pleading under Article 894, and had a “reading” of .204. Defendant agreed that the judge was correct. After the judge individually addressed each defendant, confirming similar information with them, the judge explained the following:
I’m going to go through your rights. If at anytime [sic] somebody doesn’t understand something, please, stop me. It is important that you understand it and I’ll try to do the best I can to make you understand what’s going on.
Do you understand that the crime of operating a vehicle while intoxicated is the operation of any motor vehicle, aircraft, watercraft, 19vessel or other means of conveyance when: (a) the operator is under the influence of alcoholic beverages; or (b) the operator’s blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or (c) the operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in La.R.S. 40:964?
You also understand by pleading guilty to this offense you are giving up the following rights here.
Does everybody understand the first section? Any questions?
*666 Thereafter, the defendants, as a group, responded, “No, sir.”
The judge then said the following:
You are giving up your right to plead not guilty or to pursue the not guilty plea previously entered, and go forward with a trial. You waive the right to a Judge trial. You waive the right to require the State to prove your guilt beyond a reasonable doubt. The right to confront your accuser and cross-examine witnesses called to testify against you. The right not to be compelled to incriminate yourself. The right to appellate review. If you enter this plea without the assistance of a lawyer you are giving up the following rights: The right to the assistance of a lawyer at all stages of the proceedings. Your right to have a lawyer appointed, if you cannot afford one. Do you understand that by pleading guilty you authorize the Court to impose up to the maximum sentence provided by law without a trial? Do you all understand that? Any questions?
The defendants, as a group, responded, “No, sir.”
The trial judge then proceeded to explain to the group the maximum and minimum sentences that could be imposed for first offense DWIs. The judge specifically told Domino that he was the only defendant who qualified for the additional two days of parish prison or home incarceration due to his blood alcohol concentration. The judge then asked the following to the group in the colloquy:
Do you understand that this plea can be used against you as .a second, third or fourth offender and if this happens, this plea can seriously affect you under the Habitual Offender Law?
Do you understand that in order to be multiple billed under the Habitual Offender Law, it does not matter whether one offense occurred before or after any other offense? You also understand that | inthe District Attorney’s office can go back 10 years in order to use prior offenses for multiple billing purposes.
Thereafter, the judge explained the maximum and minimum sentences that could be imposed for second and third offense DWIs. He also explained that a third offense DWI is no longer a misdemeanor, but would be considered a felony. The judge then asked if there were any questions. The transcript reflects that the defendants responded, as a group, “No, sir.” The judge then explained the maximum and minimum sentences that could be imposed for fourth offense DWIs, which would also be considered felonies.
The judge then asked the following in the colloquy:
You acknowledge that your act of pleading guilty is a knowing, intelligent, free and voluntary act on your part? You also acknowledge that no promises or threats have been made to encourage you to enter a guilty plea to the above charges; is that correct?
The transcript reflects that the defendants responded as a group, “Yes, sir.” Thereafter, the transcript reflects the following:
THE COURT:
Let’s go through them one at a time. Mr. Forrest, do you have any questions?
MR. FORREST:
No, sir.
THE COURT:
No.
THE COURT:
Mr. Nichols.
MR. NICHOLS:
No, sir.
THE COURT:
Mr. Edwards.
MR. EDWARDS:
*667 No, sir.
THE COURT:
| nI’m going to accept all your pleas.
The transcript shows that Domino was not specifically asked at this point if he had any questions. The transcript is unclear as to why the court responded “No” after the response of Forrest and before addressing Nichols.
After accepting the pleas, the trial judge sentenced each defendant individually.
We find that, according to the transcript, the trial judge did expressly advise defendant of his right to counsel and to appointed counsel if indigent. The judge explained that the right to counsel was being waived. Although the transcript does not reflect Domino declared that he understood this, the court asked if there were any questions and the defendants responded as a group that there were none. Further, at the beginning of the colloquy, the judge told the defendants to stop him at any time if they did not understand, stressing the importance of their need to understand. The transcript does not include any discussion regarding defendant’s mental condition or specific inquiries about defendant’s understanding of his waiver of counsel.
However, the determination of whether a defendant understood his waiver of counsel prior to pleading guilty to an uncomplicated misdemeanor requires less judicial inquiry than determining his understanding of his waiver of counsel for a felony trial. State v. Kerwin, 02-103 (La.App. 5 Cir. 5/15/02), 821 So.2d 28, 31. The Louisiana Supreme Court has recognized that crimes of driving while intoxicated are non-complex crimes, and are almost self-explanatory, thus requiring less judicial inquiry to determine if defendant understood his waiver of counsel in the case of a guilty plea. Nabak, 864 So.2d at 762 (citing Strain, 585 So.2d at 544). See also Theriot, supra at 1083-84, where this Court recognized that the judge did not make an inquiry into the defendant’s background and | ^competency. However, this Court determined that in light of the totality of the circumstances, there was a valid waiver of counsel.
The transcript also reflects that the trial judge informed defendant of the nature of the DWI charge and the penalty range for this charge, as well as the ranges for subsequent DWI offenses. Also, at the beginning of the colloquy, the judge confirmed defendant’s birthdate and education.
In the appeal presently before us, the trial judge concluded that according to the transcript there was no affirmative statement made by defendant that he understood the rights being waived. In the trial court’s ruling, however, no mention is made of the waiver of rights form that was executed in predicate guilty plea.
The waiver of rights form in case number S729608 (the predicate plea at issue) includes defendant’s date of birth, his social security number, his driver’s license number, and his education level. The waiver form reflects defendant was charged with an offense that occurred on September 18, 1999, in violation of LSA-R.S. 14:98(B), and that he was pleading guilty to the offense “under 894.” The form reflects his intoxilyzer reading was .204. The form also reflects the definition of the crime as well as the rights defendant was giving up, including his right to a judge trial, his right to confrontation, and his right not to be compelled to incriminate himself. Also, the form reflects the following language regarding waiver of counsel:
If I enter this plea without the assistance of a lawyer, I am giving up the following rights:
My right to the assistance of a lawyer at all stages of the proceedings.
*668 My right to have a lawyer appointed, if I cannot afford one.
Further, the waiver of rights form provides that by pleading guilty defendant is authorizing the court to impose up to the maximum sentence provided by law 113without a trial. The form reflects the penalty ranges for first offense DWI, as well as for subsequent DWI offenses. The form also sets forth the sentence that defendant would actually receive for the charged offense.
The form provides the following regarding the guilty plea:
I acknowledge that my act of Pleading Guilty is a knowing, intelligent, free and voluntary act on my part. I also acknowledge that no promises or threats have been made to encourage me to enter a guilty plea to the above charge ***
My rights have been thoroughly explained to me by the trial judge, and I understand them. The trial judge has asked me if I have any questions and has given me an opportunity to ask questions. I have no further questions to ask.
Defendant then signed the form.
We find that there is sufficient evidence of a valid waiver of counsel when considering the colloquy and the waiver of rights form. Defendant was advised of his right to counsel at all stages of the proceedings and his right to appointed counsel if indigent. The judge confirmed information about defendant, including his birthdate and his level of education. The judge advised defendant of the nature of the offense and the penalty ranges he faced for the offense, as well as the penalty ranges for future DWI offenses. As recognized by the jurisprudence, defendant pled to an uncomplicated, misdemeanor offense. Defendant was given the opportunity to ask questions and was encouraged to do so. The record reflects he did not ask questions during the proceedings. See Theriot, 782 So.2d at 1085, where this Court, in determining the validity of a waiver of counsel, considered that the defendant signed a waiver of rights form acknowledging his right to ask questions and the transcript of the plea indicated that the defendant did not ask questions or hesitate in pleading guilty. Further, it appears that in the present case |i4defendant received the benefit of pleading under LSA-C.Cr.P. art. 894, a factor considered relevant by this Court in Theriot, supra.
Defendant claimed that the first predicate plea was invalid because there was no trial judge signature on the waiver of rights form. Even though the trial judge did not sign the waiver of rights form in the predicate guilty plea, the record of that predicate offense sufficiently established that defendant had knowingly and voluntarily waived his constitutional rights. See State v. Perkins, 99-1084, pp. 4-5 (La.App. 5 Cir. 1/25/00), 751 So.2d 403, 407-08, writ denied, 00-0656 (La.12/15/00), 777 So.2d 476. See also State v. Jones, 537 So.2d 1244, 1250 (La.App. 4 Cir.1989).
Further, although the trial judge did not sign the waiver of rights form, (thereby acknowledging that he read and reviewed the contents of the waiver of rights form with defendant and gave him an opportunity to ask questions), the transcript presented regarding the predicate offense reflects a colloquy with the judge, who personally addressed the details set forth in the waiver of rights form, including the advisal of defendant’s right to counsel and his Boykin rights. Although the transcript does not appear to reflect that defendant was personally asked if he had any questions, the group was advised of their opportunity to do so. Further, defendant acknowledged by means of his sig *669 nature on the form that he was given an opportunity to ask questions and had no further questions. Defendant now argues that the only person he spoke with on the day of the plea was the Assistant District Attorney who explained the form to him. However, defendant signed the waiver of rights form, which expressly provides that defendant’s rights had been thoroughly explained to him by the trial judge. The signature also follows an acknowledgement that defendant understood his rights.
11sDefendant also challenges the colloquy of the predicate offense because a group of defendants was involved. While a personal colloquy between the trial court and the defendant is preferred, group guilty pleas are not automatically invalid. See State v. Filer, 00-0073, p. 2 (La.6/30/00), 762 So.2d 1080, 1081 (per curiam); State v. Verdin, 02-2671, p. 6 (La.App. 1 Cir. 2/3/03), 845 So.2d 372, 376-77 (per curiam). The judge personally addressed each defendant individually at times, and then collectively as a group as well. The proceedings were adequate to establish that defendant knowingly and expressly waived his Boykin rights and his right to counsel.
We therefore find that defendant failed to meet this burden of making an affirmative showing of an infringement of his rights or a procedural irregularity in the taking of the predicate plea. As such, the burden would not have returned to the State. Nevertheless, we could find that the State did produce a “perfect Boykin transcript, which reflected a voluntary, informed, and articulated waiver of the Boy-kin rights. The colloquy reflects that defendant was advised by the judge of his Boykin rights and that he was waiving these rights by pleading guilty. Further, the group agreed that pleading guilty was a knowing, intelligent, free and voluntary act on their part and acknowledged that no promises or threats were made to encourage the guilty pleas.
The trial court stated that it determined that the transcript was insufficient because there was no affirmative statement made by defendant that he understood the rights being waived. However, there is no inflexible, magic word formula for establishing the voluntariness of the plea, and that the court should have considered the waiver of rights form in addition to the transcript if the judge believed the transcript to be “imperfect.” He then should have weighed the evidence to ] ¶(¡determine whether the defendant’s Boykin rights were prejudiced as explained in Balsano, supra.
We find that the first predicate conviction is not constitutionally infirm and may be used for enhancement purposes, and therefore the trial court erred in granting defendant’s motion to quash.
For the above discussed reasons, the decision of the trial court granting the motion to quash is reversed and the matter is remanded for further proceedings.

. The State also argued that the motion to quash should be denied because defendant's basis for quashing the bill of information was not a proper ground pursuant to LSA-C.Cr.P. art. 532. Defendant argued that a motion to quash is the proper grounds for attacking an improper bill of information. The court concluded that the motion to quash was the proper vehicle for the challenge. The State does not challenge this finding on appeal.

. The State relies on Lackawanna County Dist. Atty. v. Coss, 532 U.S. 394, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) for the proposition that objection to the predicate plea is untimely. It appears Coss, however, concerned a different question, namely whether federal post-conviction relief was available when a prisoner challenged a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner was no longer in custody. 121 S.Ct. at 1570.

. It is noted that defendant testified at the hearing on the motion to quash that he had an eleventh grade education and no GED or high school diploma.