WICKER, Judge.
This appeal arises from three consolidated cases. The state filed three bills of information alleging criminal charges against the defendant, Gregory Lewis. The first bill charged the defendant with illegal possession of a firearm by a convict *187 ed felon (La.R.S. 14:95.1), the second with theft of property valued at $12,000.00 (La. R.S. 14:67) and the third with two misdemeanor counts of battery of a police officer (La.R.S. 14:34.2). The defendant pled not guilty to each of the charges, and the state proceeded to trial on the illegal possession of a firearm charge. At the conclusion of trial, the jury returned a verdict finding the defendant guilty as charged. On the day following that conviction, the defendant appeared before the trial court and withdrew his previous pleas of not guilty to the remaining charges against him. He tendered a guilty plea to an amended charge of possessing stolen things valued over $500.00 and guilty pleas to both of the misdemeanor battery counts alleged against him. The trial judge Boykinized the defendant and then accepted his guilty pleas. On the conviction for illegal possession of a firearm by a felon, the trial court sentenced the defendant to serve 10 years at hard labor, without benefit of parole, probation or suspension of sentence. The court then sentenced the defendant to 6 years at hard labor on the possession of stolen things conviction and to 30 days of parish prison time on each of the battery of a police office counts. These sentences were ordered to run concurrently with each other, but consecutive to the sentence the defendant was then serving in federal custody. The defendant now appeals. We affirm.
On appeal the defendant assigns the following errors:
1. The trial court erred in refusing to excuse prospective juror Joanne Jorns for cause;
2. The trial court erred in allowing the jury to have written evidence in the jury room, and
3. The trial judge imposed an excessive sentence of 10 years imprisonment for the charge of possession of a firearm by a convicted felon.

FAILURE TO EXCUSE JUROR:

The defendant first contends that the trial court committed reversible error by refusing to excuse for cause a prospective juror married to a deputy sheriff. Mrs. Joanne Jorns, who was called as a prospective juror in the case, stated during voir dire that she was married to a deputy with the Jefferson Parish Sheriffs Office.
Defense counsel challenged Mrs. Jorns for cause, asserting that her marriage to a deputy precluded her from acting as an unbiased juror.
In State v. Lee, 559 So.2d 1310, 1317 (La.1990), cert. denied, — U.S.-, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991) the court held:
The mere fact that a prospective juror is related to a law enforcement officer is not sufficient to grant a challenge for cause. Such should be granted only if that relationship influences the juror in his ability to make a decision in the case, [citations omitted].
The trial judge did not abuse his discretion in failing to excuse this juror for cause. Mrs. Jorns did not equivocate when asked whether she could be fair, impartial and unbiased. Furthermore, she stated her husband had only started working recently as a jail deputy and had been a truck driver previously. She did not consider her family as a “law enforcement family.” Additionally, their conversations about his job do not concern the merits of a case. There is no indication in the record that her husband knew the particular defendant or had had any contact with him.
EXHIBITS PROVIDED DURING DELIBERATION:
After beginning deliberations, the jury requested permission to examine various exhibits introduced into evidence at trial. The trial judge responded to that request as follows:
THE COURT:
Let the record reflect that the jury has requested some items. They want Exhibits 1 through 10, which are the pictures and the pictures and the arrest reports and so forth except the gun is not necessary. I think S-5 is the gun. So, they want 1 through 10 except S-5. The Court will now instruct the clerk to make those exhibits available to the jury. And the note that they sent to the Court *188 will be put into the record. The court will again stand at recess.
La.C.Cr.P. art. 793 provides:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
In State v. Billiot, 370 So.2d 539 (La. 1979), cert. denied, 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979), the defense counsel made no contemporaneous objection to the trial judge’s ruling under article 793. In Billiot the trial judge denied the jury request during deliberation to view defendant’s autobiography which had been admitted into evidence. The Billiot court held at 546:
Because no contemporaneous objection was made to the ruling of the trial judge the issue is not properly before this Court on appeal. La.Code Crim.Pro. Arts. 841 and 920. See also State v. Passman, 345 So.2d 874 (La.1977). State v. Freetime, 303 So.2d 487 (La. 1974).
There is nothing in the minute entry or transcript to indicate whether counsel were present at the ruling made by the trial judge. There is also no jury note included in the record as well as no motion for a mistrial. The defendant argues, however, that there needs to be a clear and express waiver of article 793 pursuant to State v. Adams, 550 So.2d 595 (La.1989). He relies on the lack of such waiver as a means for preserving the issue on appeal. We find Adams to be distinguishable.
In Adams the state argued the defense counsel waived his objection to the jury’s viewing defendant’s taped confession because he had earlier agreed to such review of the taped confession at trial as the best evidence as opposed to the transcript of the tape and because both the tapes and the transcript were later introduced without objection.
The Adams court was then confronted with the issue of whether the above-stated facts constituted a waiver of an article 793 objection. The court concluded there was no agreement to allow the jury to view these exhibits during deliberation. It further found that defense counsel, unlike present counsel, had filed a motion for a mistrial.
Although we cannot determine from the record whether a contemporaneous objection was made we conclude that even assuming one had been made this assignment lacks merit.
Gilíes Adams, an expert in finger print analysis, testified. He identified an arrest register on the defendant with a date of offense for attempted simple burglary of 3/7/84 and of arrest on 3/18/84. He was referred to the copy of fingerprints taken at the time the person was arrested. These fingerprints were located on the reverse side of the arrest register. This exhibit was introduced into evidence as S-l. Adams fingerprinted the defendant on February 24, 1992. These fingerprints were introduced into evidence as S-2. Adams compared the fingerprints on S-l and S-2 and concluded these were made by the same person.
Adams was also shown the arrest register on the defendant with a date of arrest of 1-06-90 for the offense of possession of a firearm by a convicted felon. Attached to this arrest register was a set of fingerprints. This exhibit was introduced into evidence as S-3. Adams testified these fingerprints were made by the same person as those of S-l and S-2.
Adams was also shown S-4, which was also introduced into evidence. He was specifically shown the bill of information of exhibit S-4 (the record in the attempted burglary proceeding). This bill was a charge of attempted simple burglary on March 7, 1984 by the defendant. Adams stated the item number on this bill was the same item number as that of the arrest register (S-l). Adams noted there were no fingerprints on the bill of information.
*189 The remaining exhibits provided to the jury were exhibits S-6 through S-10. The trial judge did not allow the gun (exhibit S-5) to go to the jury during deliberation. He allowed exhibits S-6 through S-10, photographs taken at the time of the arrest for the current charge, to be taken into the jury room. One of the photographs depicted the recovered gun.
In State v. White, 543 So.2d 611 (La.App. 2nd Cir.1989) the court found no merit to the defendant’s argument that allowing the jury to view photographs during deliberation was a violation of article 793. It held at 612:
A photograph is a reproduction of a physical object or scene. It is not “written” evidence or “testimony” within the meaning of Art. 793.
In State v. Perkins, 423 So.2d 1103 (La. 1982) the Louisiana Supreme Court explained at 1109-1110:
This court has recognized that jurors may inspect physical evidence in order to arrive at a verdict, but they cannot inspect written evidence to assess its verbal contents. State v. Passman, 345 So.2d 874, 885 (La.1977); State v. McCully, 310 So.2d 833 (La.1975); State v. Arnaudville, 170 La. 151, 127 So. 395 (1930); State v. Harrison, 149 La. 83, 88 So. 696 (1921).
The general rule as expressed by C.Cr.P. 793 is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document, [emphasis in original]. For example, a jury can examine a written statement to ascertain or compare the signature, or to see or feel it with regard to its actual existence, [emphasis added]. State v. Freetime, supra at 489. The legislature has made an express choice in this instance, and this court must follow the explicit prohibition of article 793, of jury access to written evidence during the deliberations, except for the sole purpose of physical examination.... [emphasis added].
We conclude that the sole purpose for the jury to view exhibits S-l through S-4 was for a physical examination and not for the examination of verbal contents. The purpose for the examination of these docur ments is analogous to a comparison of signatures approved by the Louisiana Supreme Court in Perkins, supra since the jury in this case could have only wished to view the fingerprints to determine whether the defendant was the same person who was previously convicted of attempted simple burglary. Exhibits S-l through S-3 contained fingerprints for comparison. S-4, the bill of information, did not contain a set of fingerprints although space had been provided for these. The bill did contain an item number. That item number matched the item number on the arrest register for the offense of attempted simple burglary. That arrest register contained fingerprints of the defendant. The arrest register for the current charge also contained the defendant’s fingerprints. The fingerprints taken of the defendant by Adams were also viewed by the jury during deliberation. In this case there was a need for the jurors to physically examine the viewed exhibits in order to arrive at a verdict. A physical examination of these documents aided the jury in determining that the defendant was the same individual who had previously been convicted of attempted simple burglary. That finding was necessary in arriving at the present conviction of illegal possession of a firearm by a convicted felon. SENTENCE:
On the defendant’s conviction for illegal carrying of a weapon by a convicted felon, the trial judge sentenced him to the maximum prison term authorized under La. R.S. 14:95.1 B: ten years at hard labor without benefit of probation, parole or suspension of sentence. The defendant then filed a Motion to Reconsider Sentence under La.C.Cr.P. art. 881.1, which the trial court denied. He now complains on appeal that the trial court imposed an illegally excessive sentence.
In sentencing the defendant, the trial judge referred to the Louisiana Sentencing Guidelines, which became effective on Jan *190 uary 1, 1992.[1] He stated, based on information gained from a review of the pre-sentencing investigation report prepared on the defendant, the maximum period of imprisonment recommended by the new guidelines was 72 months.[2] Noting that the sentence formulated by the court would exceed 72 months imprisonment, the trial judge articulated his sentencing rationale as follows:
Reviewing the presentence investigation report and the defendant’s prior criminal record, and considering these convictions that I have today to sentence him on, this now constitutes nine felony convictions. The defendant is presently incarcerated in Pennsylvania. After that he has to go to Mississippi to serve out some time. The defendant has a considerable criminal record going back to the early eighties. The defendant has had a couple of probations and has been successful. But, each time the defendant has gotten out of jail he has gotten into some more trouble. In fact, he alleges that he was out of jail when this happened, when this incident happened. He said that he was here because the federal prison system let him out by mistake and he was out for 120 days and during that 120 days he amassed three felony convictions. His record is just about as bad as I have ever seen for a habitual criminal offender.
The purpose of the Louisiana Sentencing Guidelines is “to recommend a uniform sanctioning policy which is consistent, proportional, and fair for use by this state’s trial courts in formulating sentences for felony convictions.” L.S.G. sec. 101A. These guidelines are advisory, and the trial court’s failure to impose a sentence within the recommended sanction range of the guidelines shall not alone provide grounds for that sentence to be declared unlawful or excessive. L.S.G. sec. 102J. The sentencing range designated by the guidelines is appropriate for the typical case where the offense was committed without aggravating or mitigating circumstances. L.S.G. sec. 209A. However, the trial court should depart from the designated sentencing range when sufficient aggravating or mitigating circumstances exist to significantly differentiate the particular case from the typical case involving the offense. Id. Section 209A4 addresses departures from the designated sentence range:
When departing from the designated sentence range, the court shall:
a. pronounce a sentence which is proportional to the seriousness of the offense and the offender’s criminal history; and
b. state for the record the reasons for the departure which shall specify the mitigating or aggravating circumstances, and the factual basis therefor.
Sections 209B and C of the guidelines set forth, respectively, specific aggravating and mitigating circumstances to be considered when departing from the designated sentence range.
The sentencing reasons articulated by the trial judge in this case adequately justify departure from the sentencing guidelines and imposition of a more severe sentence. The defendant’s extensive criminal record led the trial judge to characterize him as a habitual criminal offender. At the sentencing, the state confirmed its intention not to file a multiple offender bill against the defendant. The lack of a multiple offender adjudication in this case constitutes an aggravating circumstance which the trial court may consider in formulating the appropriate sentence. L.S.G. sec. 209B12. The trial judge also noted the lack of mitigating circumstances favoring the defendant in this case. The defendant’s consistent history of criminal activity mark him as the worst kind of offender for whom maximum sentences are reserved. See State v. Quebedeaux, 424 So.2d 1009 (La.1982), affirmed after remand, 446 So.2d 1210 (La.1984). The record does not disclose any indication that the trial judge abused his sentencing discretion in this *191 case. State v. Lanclos, 419 So.2d 475 (La. 1982).
We have also reviewed the records in these consolidated cases for error patent and have found none.
Accordingly, for the reasons stated the convictions and sentences in these consolidated cases are affirmed.
AFFIRMED.

. La. Acts 1991, No. 22, Sec. 2.

. Louisiana Sentencing Guidelines, Sec. 403A, Grid 5A.