JUDE G. GRAVOIS, Judge.
12Defendant, John Michael Marlbrough, has appealed his conviction of driving while intoxicated (DWI), third offense, in violation of La. R.S. 14:98(A)(D). For the *69 reasons that follow, we affirm defendant’s conviction and sentence.

FACTS AND PROCEDURAL HISTORY

Louisiana State Trooper Travis Canci-enne[1] testified at trial that on July 20, 2012, at approximately 11:00 p.m., he was operating radar on Lapalco Boulevard in Jefferson Parish when he observed defendant’s vehicle traveling westbound on La-palco at “what appeared to be a very high rate of speed.” He activated his radar, which confirmed that defendant was going 63 miles per hour in a 40 miles per hour speed zone. Trooper Cancienne pulled defendant over and asked him for his driver’s license and his vehicle insurance and registration papers. Defendant did not have a driver’s license with him, as it was suspended; he did, however, have a Louisiana identification card in his possession.
| -jUpon speaking to defendant, Trooper Cancienne smelled “a strong odor of an alcoholic beverage on his breath.” Further, defendant “had slurred speech” and “was swaying on his feet as he was talking” to the officer, leading the officer to believe that defendant might be impaired. Based on these observations, Trooper Can-cienne asked defendant to perform a standardized field sobriety test, which he explained was a test to see how defendant would do with his coordination. Defendant agreed. Trooper Cancienne then administered the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test to defendant. Trooper Canci-enne testified that defendant did not perform well on any of these tests.
Based on his observations of defendant, Trooper Cancienne arrested defendant for DWI, handcuffed him, placed him in the rear of his police unit, and advised him of his Miranda[2] rights. Defendant was then transported to the Jefferson Parish lockup (the jail) and was subsequently booked with DWI, speeding, driving under a suspended driver’s license, and having an open alcoholic beverage container in his vehicle. At the jail, Trooper Cancienne again advised defendant of his Miranda rights, as well as his rights relating to a chemical test for intoxication. Defendant agreed to submit to an Intoxilyzer test. During the standard interview prior to administration of the test, defendant admitted that he had had three to four drinks at a bar that evening, starting at about 9:00 p.m. and ending at about 10:00 p.m. Defendant subsequently blew into the Intoxilyzer. The results of this breath test showed that defendant had a blood alcohol level of .201 grams per cent as of that time (12:22 a.m.).
Sergeant Joel O’Lear of the Jefferson Parish Sheriffs Office (the “JPSO”), who works in the JPSO Crime Lab, was accepted by the court as an expert in the 14field of latent fingerprint examination and identification, and testified that he took defendant’s fingerprints on the day of trial (identified as State’s Exhibit 8) and compared them to fingerprints found in a certified conviction packet from a DUI (driving under the influence) arrest on November 7, 2010 in Santa Rosa County, Florida (State’s Exhibit 9). He concluded that both sets of prints came “from one individual, and that’s Mr. Marlbrough.”
Sergeant O’Lear also reviewed a certified conviction packet from Case No. S1118500 of Second Parish Court for the Parish of Jefferson for first offense DWI (State’s Exhibit 11); however, the fingerprints in that packet could not be used due to them being of insufficient quality. Therefore, Sergeant O’Lear’s JPSO col *70 league, Nicky Passalaqua, printed and certified a ten-print card (State’s Exhibit 12) taken by the JPSO when defendant was arrested on March 21, 2009 for the same offense as was applicable to State’s Exhibit 11. Sergeant O’Lear then compared the fingerprints contained in State’s Exhibit 8 to those in State’s Exhibit 12 and found that “they were produced by one and the same individual, and that was Mr. Marlbrough.”
At the conclusion of the trial, the six-person jury found defendant guilty as charged.[3] On May 31, 2013, after a hearing, the trial judge denied defendant’s motions for post-verdict judgment of acquittal and for a new trial. After defendant waived sentencing delays, the trial judge sentenced defendant to one year in the Department of Corrections without the benefit of parole, probation, or suspension of sentence, and to pay a $2,000.00 fine.[4] Also on May 31, 2013, defendant filed a timely motion for an appeal which was granted. This appeal followed.
| ¡ASSIGNMENTS OF ERROR NUMBERS ONE AND THREE
The State failed to present sufficient evidence to uphold defendant’s conviction. (Assignment Number One)
The trial court erred in admitting pri- or conviction in Jefferson Parish case number S1118500. (Assignment Number Three)
In these related assignments of error, defendant argues that the evidence was insufficient to support his third offense DWI conviction because the State failed to sufficiently prove one of the prior DWI convictions. Specifically, he contends that the State failed to present sufficient proof that he knowingly, freely, and intelligently waived his constitutional rights in case number S1118500 in Second Parish Court for the Parish of Jefferson on August 9, 2011. Defendant asserts that he did not sign the “Certificate” at the end of the guilty plea form in that case that certifies that his rights had been read and explained to him and that he had no further questions. He thus asserts that the trial judge erred by admitting into evidence the prior conviction in case number S1118500 from Second Parish Court.
The record reflects that on May 28, 2013, defendant filed a motion in limine to prohibit the State from introducing evidence of his 2011 guilty plea in case number S1118500 from Second Parish Court. In that motion, defendant contended that he did not sign the “Certificate” at the end of the form indicating that his rights had been read and explained to him and that he had no further questions. Therefore, in his motion, defendant argued that his plea was not knowingly and intelligently waived.
On May 28, 2013, the trial judge found that the motion in limine was actually a motion to quash and treated it as such; the State agreed. At the hearing on the motion, defendant repeated his arguments. *71 The State responded that ^defendant, his attorney, and the trial judge had signed the Boykin[5] form that listed all of the relevant Boykin rights, noting that defendant had cited no law showing that a certification by defendant was necessary to confect a proper Boykinization in a DWI case. The State also noted that certified minute entries showed that defendant was advised of his Boykin rights by the court when he pled guilty to said charge on August 9, 2011.
After hearing argument of counsel, the trial judge denied the motion to quash, stating that the form in question properly advised defendant of his Boykin rights and that the form was signed by defendant, defense counsel, and the trial judge. The trial judge noted that the form provided at the beginning that defendant had been informed of and understood the charge to which he was pleading and that he had waived the “following rights,” which the form then listed. The trial judge found that this was a sufficient waiver of rights, and that it was clear that defendant freely and voluntarily waived his rights. The trial judge found that the “Certificate” and certification at the end of the form was “superfluous” and not necessary, as the form met all the legal requirements set out by Boykin. He said that although the “Certificate” at the end of the form was not filled out, it was of “no moment” because the signed form showed that defendant was advised of his rights and that he understood them as indicated by his signature thereon, and that the minute entry for that court appearance also showed that defendant was Boykinized. Defense counsel objected to this ruling, contending that the certification was not “superfluous” and was a requirement under the law.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a 17rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
Louisiana Revised Statute 14:98 provides, in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator’s blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood[.]
In order to convict an accused of driving while intoxicated, the prosecution *72 must prove that the defendant was operating a vehicle and was under the influence of alcohol or drugs. State v. Cowden, 04-707 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, 1082, writ denied, 04-3201 (La.4/8/05), 899 So.2d 2. To convict a defendant of third offense driving while intoxicated, as in the present case, the State must also show that the defendant had two other valid convictions. La. R.S. 14:98(D). In the present case, defendant does not dispute on appeal that he was operating a vehicle or that he was under the influence of alcohol or drugs or that he |shad one valid predicate conviction. He only contends that the State failed to prove that his conviction in Second Parish Court case number S1118500 was valid.
A presumption of regularity attaches to prior convictions in multiple offender DWI cases and the burden is on the defendant to show the prior guilty plea is constitutionally deficient. State v. Collins, 04-255 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, 1153, writ denied, 04-2798 (La.3/11/05), 896 So.2d 62.
In State v. Balsano, 09-0735 (La.6/19/09), 11 So.3d 475, 479 (per curiam ), the Louisiana Supreme Court recognized that it has consistently allowed defendants to attack collaterally the validity of guilty pleas used to enhance their sentences, whether in habitual offender proceedings under La. R.S. 15:529.1, State v. Shelton, 621 So.2d 769 (La.1993), or in habitual offender DWI prosecutions, State v. Carlos, 98-1366 (La.7/7/99), 738 So.2d 556. This line of jurisprudence sets forth the respective burdens of proof when a defendant challenges the use of a predicate conviction for enhancement under the recidivist habitual offender and driving while intoxicated statutes.
The Louisiana Supreme Court’s decision in Carlos established a three-step analysis for determining the validity of prior DWI guilty pleas for use in enhanced DWI proceedings. Balsano, supra. Adopting the Court’s prior opinion in Shelton, supra, and acknowledging the presumption of regularity that attaches to prior final convictions, Carlos placed the initial burden on the State of proving the existence of the prior guilty pleas and that the defendant was represented by counsel when the pleas were taken. Balsano, supra. If the State meets this initial burden, “the defendant must produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.” Balsano, supra (quoting Carlos, 738 So.2d at 559).
l3If the defendant makes the required showing, the burden reverts to the State to produce a “perfect” Boykin transcript, i.e., one “which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin.” Id. (quoting Carlos, 738 So.2d at 559 n. 4 and Shelton, 621 So.2d at 775 n. 12). Anything less than a perfect transcript, “such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant’s Boykin rights were prejudiced.” Balsano, supra (quoting Carlos, 738 So.2d at 559).
In Boykin v. Alabama, supra, the United States Supreme Court emphasized three federal constitutional rights that are waived by a guilty plea: the privilege against self-incrimination, the right to a trial by jury, and the right to confront accusers. Because a plea of guilty waives these fundamental rights of an accused, due process requires that the plea be a voluntary and intelligent waiver of known rights in order to be valid. The record of the plea must show that the defendant was informed of these three basic rights and then knowingly and voluntarily waived *73 them. State v. Galliano, 396 So.2d 1288, 1290 (La.1981). Under Boykin, the decision to plead guilty will not be considered voluntary unless, at the very least, the defendant has been advised of his privilege against self-incrimination, and his rights to a trial by jury and confrontation. State v. Payton, 04-1024 (La.App. 5 Cir. 1/11/05), 894 So.2d 362, 365. The record must also show the defendant freely and voluntarily waived those rights. Id.
The Balsano court explained that Carlos spoke more broadly about prejudice to Boykin rights because prior DWI convictions used to enhance a sentence in many cases, if not most, are misdemeanor offenses as to which the defendant does not have the right to a jury trial, shrinking the three-right rule to two rights. Balsano, 11 So.3d at 479-80.
| ^Whenever a misdemeanor guilty plea is to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, it is incumbent upon the trial judge to inform the defendant that by pleading guilty, he waives these enumerated constitutional rights. State v. Vu, 02-1243 (La.App. 5 Cir. 4/8/03), 846 So.2d 67, 71. The trial judge must also ascertain that the accused understands what the plea connotes and its consequences. “While it is preferable for the trial judge to conduct a colloquy to ascertain the validity of the plea, such a colloquy may not be indispensable, as long as the record contains some other affirmative showing to support the plea.” Id.
In State v. Robair, 622 So.2d 829 (La. App. 4 Cir.1993), the defendant pleaded guilty to a theft charge and was later found to be a second felony offender. At the multiple bill hearing, defense counsel objected to the defendant being adjudicated a second felony offender because the plea form from the earlier offense was not signed a second time at the bottom of the page acknowledging that there was a colloquy between the judge and the defendant. In Robair, the defendant signed the plea form indicating his understanding of his right to a jury trial, his right to confront his accusers, and his privilege against self-incrimination. The plea form was signed once by the defendant, the judge, and the defendant’s attorney. The Fourth Circuit found that the fact that the defendant was represented by counsel at the time he pleaded guilty, that he signed a plea form on which his rights were specified, and that the rights were delineated on the minute entry, were evidence that the defendant voluntarily waived his constitutional rights when he pleaded guilty to the predicate offense. The Fourth Circuit also found that the law did not require that the defendant sign the bottom line on the plea form. Id. at 830-32.
|1TIn the present case, the plea form for the predicate conviction in question, Second Parish Court case number S1118500, provides that defendant was pleading guilty to DWI after having been informed of and understanding the charge to which he was pleading. The plea form further provides that defendant was waiving the “following rights,” which included the right to a trial by a judge (and if convicted, the right to appeal), the right to cross-examine witnesses, and the right against self-incrimination. Defendant was also advised of his right to compulsory process of the court to require witnesses to appear and testify for him, and the right to have an attorney present at every stage of the proceeding, and if financially unable to employ counsel, one would be appointed to represent him.
The plea form states that by entering *74 this plea under La.C.Cr.P. art. 894,[6] defendant was waiving all of those rights. It also set forth the sentence defendant was going to receive and the fact that defendant had not been forced, threatened, or intimidated to make this plea. The plea form reflected that this conviction could be used in the future to enhance or increase the penalties he would receive for any subsequent conviction of the crime of DWI. The plea form was dated August 9, 2011 and signed by defendant, defense counsel, and the trial judge.
Defendant is correct is asserting that the “Certificate” at the end of the waiver of rights form (located on the form immediately after the signatures of defendant, his attorney, and the trial judge) was not completed or signed by defendant. It states:

CERTIFICATE

I hereby certify that the above rights have been read and explained to my full satisfaction by _, and that I have no further questions to ask concerning my rights and that this acknowl-edgement by me will become part of these proceedings.
|12Cretna, Louisiana, this _ day of -, 20—
Signature of Defendant
Upon review of the conviction packet in Second Parish Court case number S1118500, we find that defendant knowingly and voluntarily waived his constitutional rights in the prior guilty plea, and therefore that plea can be used as a predicate conviction in the present case. The guilty plea form dated August 9, 2011 reflects that defendant was advised of his Boykin rights and then knowingly and voluntarily waived them as evidenced by his signature and that of his attorney and the trial judge on the form. Additionally, the master docket sheet for the subject case states that on August 9, 2011, defendant was advised of his Boykin rights by the court and pleaded guilty as charged under La. C.Cr.P. art. 894. Thus, we agree with the trial judge (and with the analysis by the Robair court) and find that the above-quoted “Certificate” and certification at the end of the waiver of rights form was unnecessary, because defendant acknowledged in the previous portions of the form that he had been advised of and was waiving his rights.
Accordingly, the trial judge did not err by denying defendant’s motion to quash and by admitting into evidence at trial defendant’s prior conviction in Second Parish Court case number S1118500. Further, the Second Parish Court conviction was properly used as a predicate conviction in the present case.
In conclusion, we find that a review of the evidence introduced at defendant’s trial indicates that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support defendant’s conviction of third offense DWI. Under the Jackson standard, we find that the evidence when viewed in the light most favorable to the prosecution, was sufficient 11sto convince a rational trier of fact that all of the elements of third offense DWI have been proven beyond a reasonable doubt.
These assignments of error are without merit.

*75
ASSIGNMENT OF ERROR NUMBER TWO

The trial court’s limiting of defense counsel’s closing argument violated defendant’s constitutional right to put on a defense.

In this assignment of error, defendant argues that the trial judge erred by limiting his closing argument which violated his constitutional right to put on a defense. Specifically, he contends that the trial judge erred by refusing to allow him to argue that the Second Parish Court predicate plea was invalid due to the lack of defendant’s signature on the “Certificate” at the end of the guilty plea form pertaining to that conviction.
A review of the closing arguments shows that defense counsel argued that the jury should disregard the Second Parish Court conviction because defendant did not sign the “Certificate” at the end of the guilty plea form pertaining to that conviction. Defense counsel stated in pertinent part:
In fact, on the final page of the plea form, which again, you all reviewed, there’s a certification, a certificate where the defendant is given the opportunity to say, I certify that the above rights have been read and explained to my full satisfaction by whomever, and I have no further questions to ask concerning my rights and that this acknowledgement by me will become part of these proceedings. It was never signed. This is an official record.
Afterwards, both counsel approached the bench. The prosecutor stated defense counsel’s argument on this point had been previously heard and rejected by the trial judge. Defense counsel responded that he was not arguing for the suppression of evidence, but that this evidence should not be given any weight. The trial judge stated that he was not going to let defense counsel go any further with regard to the certification. The trial judge added that he thought defense [ 14counsel had made his point in that regard and that he could now move on, to which defense counsel responded, “Alright.”
Defense counsel did not proffer the substance of any additional arguments he wanted to make to the jury.
Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. State v. Lirette, 11-1167 (La.App. 5 Cir. 6/28/12), 102 So.3d 801, 813, writ denied, 12-1694 (La.2/22/13), 108 So.3d 763. However, this right does not require a trial court to permit the introduction of evidence that is inadmissible, irrelevant, or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. Id. The trial court is accorded great discretion in ruling on evidentiary matters, and absent a clear abuse of that discretion, rulings on admissibility of evidence will not be disturbed on appeal. State v. Magee, 11-574 (La.9/28/12), 103 So.3d 285, 321, cert. denied, — U.S. —, 134 S.Ct. 56, 187 L.Ed.2d 49 (2013).
Louisiana Code of Criminal Procedure article 774 provides the following regarding the scope of argument, including closing argument, to-wit:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state’s rebuttal shall be confined to answering the argument of the defendant.
*76 Here, the trial judge had previously denied defendant’s motion to quash, thereby allowing the prior conviction from Second Parish Court to be used as a predicate conviction in the present case. In denying the motion, the trial judge found that defendant had been advised of and waived his constitutional rights even though he did not sign the “Certificate” at the end of the form. However, even though the trial judge denied the motion, he still allowed defense counsel to 1^present his defense to the jury. The record shows that defense counsel argued to the jury that it should disregard the prior conviction from Second Parish Court because defendant did not sign the “Certificate” at the end of the plea agreement certifying that his rights had been read and explained to him and that he had no questions. Although the trial judge did not allow any further argument on that issue, defense counsel was allowed to make his point to the jury regarding the certification.[7]
Accordingly, we find that the record reflects that the trial judge did not abuse his discretion by limiting defense counsel’s closing argument, as defendant was sufficiently allowed to present his defense in this case.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR

The trial court erred in failing to reread more extensive portions of jury instructions in response to jury’s question during deliberations.

In this assignment of error, defendant argues that the trial judge erred by denying his request to re-read portions of the jury instructions that he contends would have answered the jury’s question submitted during deliberations. He contends that the trial judge’s failure to do so was not harmless error.
The record reflects that during deliberations, the jury presented a question to the court. The question read, “Are we determining the level of offense based on previous convictions or intoxication levels/evidence in previous convictions?” The prosecutor stated that he thought the court should read the jury instructions to the jury. Defense counsel said that it might also be helpful to give the jury the elements of the crime again. The prosecutor commented that the jury either believed or disbelieved that defendant was previously convicted. The trial judge 11firesponded that he was going to read the elements of third offense DWI to the jury. Defense counsel urged the trial judge to also read the elements of first and second offense DWI. The prosecutor replied that the jury did not ask anything about responsive verdicts, so those elements need not be read. The trial judge said the obvious answer to the question was that the jury should determine the level of offense based on previous convictions, but short of telling them that, he would read the elements of the crime again.
After further discussion, the trial judge instructed the jury “that in order to find the defendant guilty of a third offense operating a vehicle while intoxicated, you must find that the defendant has been convicted of the offense of operating a vehicle while intoxicated on two prior occasions.”
Although defense counsel did not specifically object to the trial judge’s fail *77 ure to re-read all of the responsive verdicts, he made it clear that he wanted all of the responsive verdicts re-read to the jury and not just the instruction pertaining to third offense DWI. As such, defendant properly preserved this issue for review.
Louisiana Code of Criminal Procedure article 802 requires the trial court to charge the jury as to the law applicable to the case. Here, the jury asked whether it was to determine the level of offense based on previous convictions or intoxication levels from previous convictions. The record reflects that the trial judge properly answered the question by re-instructing the jury that in order to find defendant guilty of third offense DWI, it must find that defendant has been convicted of the offense of operating a vehicle while intoxicated on two prior occasions. It was unnecessary for the trial judge to re-read all of the responsive verdicts, as the jury did not ask for those.
1 t7In light of the foregoing, we find that the trial judge did not err by denying defendant’s request to re-read more extensive portions of the jury instructions in response to the jury’s question during deliberations.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE

The trial court erred in denying jury’s request to review documentary evidence of defendant’s prior conviction.

Finally, defendant argues that the trial judge erred by denying the jury’s request to review evidence of the prior Second Parish Court conviction.
The record reflects that during deliberations, the jury presented a second question to the court which read, “Can we look at the evidence from first offense Jefferson Parish again?” Defense counsel said he had no objection; however, the prosecutor objected, stating that the jury had already reviewed that evidence extensively and that no written documents could be given to the jury according to the “Code,” meaning the Louisiana Code of Criminal Procedure. The trial judge commented that the “Code” said the jury could “review documents but not writings.”
After hearing arguments of counsel and reviewing La.C.Cr.P. art. 793, noting that this article stated that the jury shall not have access to written evidence, the trial judge ruled he would not send the certified conviction packet from Second Parish Court (State’s Exhibit 11) back to the jury. The trial judge noted that the jury had ample time to review the documents during trial. Defense counsel objected to the trial judge’s position that the law did not allow it, asserting that the law did allow it. When the jury was brought back into the courtroom, the trial judge told the jury that the law did not allow them to see evidence of the first |18offense Jefferson Parish conviction again, as it was a written document, and they would have to go by their memory.-
Louisiana Code of Criminal Procedure article 793 provides in pertinent part:
A. Except as provided in Paragraph B [8] of this Article, a juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in *78 evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
Generally, a jury is not allowed to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. State v. Perkins, 423 So.2d 1103, 1109-10 (La.1982). A jury can examine a written statement to ascertain or compare a signature or to see or feel it with regard to its actual existence, but not to examine its verbal contents. Id.
In the present case, defense counsel admitted in closing argument that defendant was operating a vehicle while intoxicated. Consequently, the only issue for the jury to decide was whether defendant had two prior DWI convictions. The exhibit in question, State’s Exhibit 11, is a certified conviction packet from Second Parish Court, which contains minute entries, a bill of information, a guilty plea form, fingerprints, and a master docket sheet relating to that conviction.
In State v. Lewis, 611 So.2d 186 (La.App. 5 Cir.1992), the defendant was charged with illegal possession of a firearm by a convicted felon. After beginning deliberations, the jury requested permission to examine various exhibits introduced into evidence at trial, which the trial judge allowed. Included in these exhibits were: 1) Exhibit S-l, an arrest register with fingerprints on the reverse side and an 119arrest date of 3/18/84; 2) Exhibit S-2, fingerprints of defendant taken on 2/24/92; 3) Exhibit S-3, an arrest register with a date of arrest of 1/6/90 with an attached set of fingerprints; and 4) Exhibit S-4, a bill of information pertaining to the 3/18/84 arrest. Id. at 187-88.
The Lewis Court found that the trial judge did not err by allowing the jury to view these exhibits during deliberations and concluded that the sole purpose for the jury to view Exhibits S-l through S-4 was for a physical examination and not for the examination of verbal contents. It asserted that the purpose for the examination of these documents was analogous to a comparison of signatures approved by the Louisiana Supreme Court in Perkins, supra, since the jury in Lewis could have only wished to view the fingerprints to determine whether the defendant was the same person who was previously convicted of attempted simple burglary. This Court found that there was a need for the jurors to physically examine the viewed exhibits in order to arrive at a verdict and that a physical examination of these documents aided the jury in determining that the defendant was the same individual who had previously been convicted of attempted simple burglary. This Court stated that that finding was necessary in arriving at the present conviction of illegal possession of a firearm by a convicted felon. State v. Lewis, 611 So.2d at 189.
We find that the trial judge in the present case did not abuse his discretion by not allowing the jury to view evidence of the Second Parish Court conviction. First, the exhibit contained written information, and La.C.Cr.P. art. 793 specifically provides that the jury cannot have access to any “written evidence.” Second, although the jury did not indicate why it wanted to view the exhibit in question, it does not appear that the jury wanted to compare fingerprints, as in Lewis, supra, since the jury did not request the exhibit of defendant’s fingerprints |2ntaken during the present case to compare them to the prior conviction. As such, it appears that the jury wanted to view the exhibit in question to determine whether defendant’s lack of a signature on the “Certificate” at the end of the form rendered his prior guilty plea *79 invalid. However, in order to determine that, the jury would have had to read the plea agreement, which is prohibited by Article 793. Further, it is noted that all of the State’s exhibits, including State’s Exhibit 11, were published to the jury prior to deliberations.
In light of the foregoing, we find that the trial judge did not err by not allowing the jury to view the written evidence of the prior conviction from Second Parish Court, as this is specifically prohibited by La.C.Cr.P. art. 798.
This assignment of error is without merit.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent that require corrective action.

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed.

AFFIRMED.

. Trooper Cancienne's last name is also spelled "Canciennes” in the trial transcript.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Also, with regards to the bench trial conducted simultaneously on the misdemeanor charges, the trial judge found defendant guilty as charged of speeding and operating a vehicle with a suspended driver’s license, and not guilty of having an open container of an alcoholic beverage in the vehicle. These convictions are not part of this appeal.

. Additionally, the trial judge sentenced defendant to seven days in the Department of Corrections without the benefit of parole, probation, or suspension of sentence and a $500.00 fine on the driving under a suspended license conviction, to run consecutively to the one-year third offense DWI sentence. The trial judge also fined defendant $250.00 on the speeding conviction (case number 13-07).

. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).

. La.C.Cr.P. art. 894 generally allows for the suspension and deferral of sentence and imposition of probation in misdemeanor cases.

. Additionally, as discussed infra, it appears that the jury considered this argument, since it requested, but was denied, the opportunity to review again the evidence pertaining to that predicate conviction.

. It is noted that Paragraph B is not applicable to the present case.